1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

9

JAMES LIMA,

10

                                        Petitioner,

11

                vs.

12

M.C. KRAMER, Warden; and BILL
LOCKYER, Attorney General of the State of
California,

13

14

                                        Respondents.

CASE NO.        06-CV-02388-AJB (BGS)

**REPORT AND RECOMMENDATION TO
DENY PETITION FOR WRIT OF
HABEAS CORPUS**

15

**I. Introduction**

16

        On December 1, 2006, James Lima ("Petitioner"), a California prisoner, filed a First Amended

17

Petition for Writ of Habeas Corpus ("Amended Petition"), pursuant to 28 U.S.C. § 2254, against M.C.

18

Kramer, the Warden at Folsom State Prison, and Bill Lockyer, the Attorney General of the State of

19

California[1].  (Doc. No. 4 at 1.)  In the Amended Petition, Petitioner alleges thirteen grounds for relief

20

stemming from his convictions for conspiracy to commit residential robbery, two counts of residential

21

robbery, false imprisonment by menace, felonious evasion of a police officer, and first degree murder

22

under the provocative act doctrine.  (*Id.* at 6-9.)  On October 30, 2009, Respondents filed an Answer

23

24

        [1] Respondents note Michael S. Evans is the current Warden of Folsom State Prison, where Petitioner is
incarcerated.  M.C. Kramer no longer has custody of Petitioner, and should be dismissed as a party pursuant to Federal

25

Rules of Civil Procedure 25(d).  (Doc. No. 44 at 2.)  The Court also notes that the Attorney General of the State of
California, is not a proper respondent in this action. *See* Rule 2(a)-(b), 28 U.S.C. foll. § 2254.  In order to conform with

26

the requirements of Rule 2(a) of the Rules Governing § 2254 Cases and to avoid changing the Respondent again if
Petitioner is transferred to another prison or the warden changes, the Court hereby sua sponte ORDERS the substitution

27

of Matthew Cate, Secretary of the California Department of Corrections and Rehabilitation, as Respondent in place of
"M.C. Kramer" and "Bill Lockyer."  *See Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 894 (9th Cir. 1996) (stating that the

28

respondent in § 2254 proceedings may be the chief officer in charge of state penal institutions).  The Clerk of the Court
shall modify the docket to reflect "Matthew Cate, Secretary" as respondent in place of "M.C. Kramer" and "Bill Lockyer."

1  to Petition, arguing Petitioner defaulted his claims in state court by raising them in a procedurally

2  improper manner and that Petitioner's ground ten fails on the merits.  (Doc. No. 44 at 3-4.)

3      This case is before the Magistrate Judge pursuant to Civ. L. R. 72.1(d)(4) for proposed findings

4  of fact and recommendation for disposition.  This Court has considered the Amended Petition,

5  Respondents' Answer, accompanying Memorandum of Points and Authorities, Supplemental

6  Memorandum of Points and Authorities in Support of Answer, Petitioner's Traverse and Supplemental

7  Traverse, and all supporting documents submitted by the parties.  Based on the documents and

8  evidence presented in this case, and for the reasons set forth below, the Court recommends the

9  Amended Petition be **DENIED.**

10              **II. Factual and Procedural Background**

11      This Court gives deference to state court findings of fact and presumes them to be correct;

12  Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence.  28

13  U.S.C. § 2254(e)(1); *see also Parke v. Raley,* 506 U.S. 20, 35-36 (1992) (holding findings of historical

14  fact, including inferences properly drawn from such facts, are entitled to statutory presumption of

15  correctness).  The following are facts as found by the Superior Court of the State of California, County

16  of San Diego and the California Court of Appeal.  (*See* Doc. No. 6-9 at 1; Doc. No. 6-13 at 1.)

17      In November 1999, Petitioner and his co-defendant were convicted of first degree murder,

18  conspiracy to commit robbery, two counts of residential robbery, two counts of false imprisonment

19  by menace, and felonious evasion of a police officer.  (Doc. No. 6-9 at 1.)  Petitioner was also

20  convicted of sexual battery.  (Doc. No. 6-13 at 1.)  On February 19,1999, after committing a

21  residential robbery, Petitioner and his codefendant, Hieu Huu Lee, drove away from the scene.  (*Id.*

22  at 5.)  Two different patrol cars pursued Petitioner as he drove through several red lights at speeds of

23  fifty to sixty miles per hour.  (*Id.* at 6.)  During this chase, one of the police cars, following close

24  behind Petitioner, collided with an innocent motorist's car, killing the driver.  (*Id.* at 7.)

25      At trial, the government pursued the first-degree murder conviction under two theories: the

26  provocative act doctrine and the felony-murder rule.  (*Id.* at 2.)  Petitioner appealed arguing, among

27  other things, the jury was erroneously instructed on the felony-murder rule, as it did not apply to the

28  facts of the case.  (*Id.*)

06-CV-02388-AJB (BGS)

1    In a decision filed on December 13, 2001, the California Court of Appeal, Fourth District,

2  Division One reversed Petitioner's murder conviction and held the felony-murder rule did not apply

3  to the facts of Petitioner's case.  (Doc. No. 6-5 at 9, 19.)  The California Court of Appeal rejected

4  Petitioner's remaining contentions and affirmed Petitioner's convictions on all other counts.  (*Id.* at

5  19.)

6    The government retried Petitioner on the murder charge, for which he was again convicted of

7  first-degree murder under a provocative act theory.  (*Id.*)  Petitioner was sentenced to a term of

8  twenty-five years to life, to run consecutive to the twenty-year prison term for the convictions from

9  the first trial that were upheld on appeal.  (*Id.*)

10    Petitioner again appealed the murder conviction on two theories; first, the provocative act

11  doctrine was inapplicable to the case, as the death of the innocent motorist was the result of a

12  negligent or reckless act, as opposed to a deliberate and intentional use of lethal force; and second,

13  the court improperly limited his right to cross-examine the officer who collided with the victim's car

14  concerning the possible reckless or negligent nature of that officer's driving prior to the crash.  (*Id.*

15  at 3-4.)

16    In a decision filed on April 14, 2004, the court of appeal affirmed the judgment, holding the

17  provocative act theory of murder was properly applied to the facts of the case.  (Doc. No. 6-13 at 3.)

18  Further, the court held the doctrine precluded consideration of Petitioner's contention concerning his

19  right to cross-examine the police officer as to the reasonableness of his driving in the collision with

20  the innocent driver.  (*Id.*)

21    Petitioner submitted a petition for review to the California Supreme Court, raising one claim

22  for relief based on state law: the provocative act doctrine could not, and should not, be expanded to

23  apply to a case where a police officer in pursuit of a fleeing suspect hits and kills an innocent motorist

24  with his car.  (*Id.*)  The California Supreme Court denied the petition without comment on July 28,

25  2004.  (*Id.*)

26  / / /

27  / / /

28  / / /

06-CV-02388-AJB (BGS)

On March 21, 2005[2], Petitioner filed a petition for writ of habeas corpus in the California Superior Court for the County of San Diego, alleging eleven grounds for relief.  (Doc. No. 6-13 at 3.) On May 13, 2005, the Superior Court denied the petition holding all of Petitioner's claims either were, or could have been, raised on appeal, and the law does not allow a petitioner to re-litigate his case by way of a habeas corpus petition.  (*Id.*)

On November 22, 2005, Petitioner filed a habeas petition in the California Supreme Court. (Doc. No. 6-14.)  Petitioner alleged the following fourteen grounds for relief: (1) the court denied his right to self-representation in violation of the Sixth and Fourteenth Amendments; (2) the appellate court failed to instruct the lower courts on how to proceed upon reversal as required by 28 U.S.C. § 2106; (3) evidence and jury instructions pertaining to his robbery convictions were erroneously admitted at trial in violation of his Fourteenth Amendment rights; (4) the prosecution engaged in misconduct by withholding the officers' written statements (citing *Napue v. Illinois,* 360 U.S. 264 (1959); *Pyle v. Kansas,* 317 U.S. 213 (1942); *Mooney v. Holohan,* 294 U.S. 103 (1935)); (5) the court denied his Sixth and Fourteenth Amendment rights to present a defense when it denied his motion for discovery from the police department; (6) the court erred by giving the instruction regarding robbery still in progress (citing U.S. Const. amend XIV); (7) the court erred by giving the instruction regarding fleeing the police (citing U.S. Const. amend XIV; U.S. Const. amend V); (8) the prosecution engaged in misconduct by offering an erroneous special instruction in violation of the Fifth Amendment and *Ashe v. Swenson,* 297 U.S. 436 (1970); (9) the prosecution committed prejudicial error by telling the jury during closing that it could convict Petitioner of first or second degree murder even though the jury was not given a verdict from for the second degree murder, or a lessor included offense instruction (citing U.S. Const. amend XIV; U.S. Const. amend V; U.S. Const. amend VI; U.S. Const. amend VIII); (10) the provocative act doctrine is illegal (no federal citation); (11) the court improperly punished Petitioner under an over broadly-defined statute (citing *Schad v. Arizona*, 501 U.S. 1277 (1991); *Richardson v. United States*, 526 U.S. 1155 (1999)); (12) marking out "manslaughter" in the homicide jury instruction constituted prejudicial error in violation of his Fifth, Sixth, Eighth, and

---

[2] *See* Doc. No. 11 at 4 n.1, citing *Houston v. Lack*, 487 U.S. 266, 272 (1988) (holding a notice of appeal is filed within the meaning of Rule 11 at the moment it is delivered to prison officials for forwarding to the clerk of the district court).

1  Fourteenth Amendment rights; (13) the trial court violated his due process rights and Sixth

2  Amendment right to a fair trial by refusing to assist the jury on a point of law; and (14) the convictions

3  for false imprisonment and "the gun allegation" during the first trial were not supported by facts (no

4  federal citation). (Doc. No. 6-14 at 3-23.) The California Supreme Court summarily denied the

5  habeas petition on August 23, 2006, citing *In re Dixon*, 41 Cal. 2d 756 (1953) and *In re Waltreus*, 62

6  Cal. 2d 218 (1965). (Doc. No. 4 at 39.)

7  　　　On October 24, 2006, Petitioner filed a new petition for writ of habeas[3] corpus in this Court,

8  alleging the first thirteen of the fourteen grounds for relief he raised in his habeas petition to the

9  California Supreme Court, but without citation to any constitutional provisions or other federal law.[4]

10  (Doc. No. 1 at 6). On November 27, 2006[5], Petitioner filed the First Amended Petition, which is the

11  operative pleading before the Court. (Doc. No. 4 at 1.)

12  　　　Respondents moved to dismiss the Amended Petition on January 25, 2007. (Doc. No. 6-1 at

13  17.) On February 20, 2007, Petitioner filed a timely opposition to the motion to dismiss. (Doc. No.

14  10 at 9.) On May 22, 2007, the magistrate judge issued a report and recommendation on the motion

15  to dismiss, which recommended equitable tolling apply and Respondents' motion to dismiss all claims

16  on the grounds the federal petition was not timely be denied. (Doc. No. 11 at 30.) The magistrate

17  judge also recommended Petitioner's claims 1-9 and 11-13 be procedurally barred, and Respondents

18  should be ordered to answer claim 10. (*Id.*) The district judge adopted in part and rejected in part the

19  report and recommendation, concluding AEDPA's one-year statute of limitations had run before

20  Petitioner filed the First Amended Petition, applying all statutory tolling to which he was entitled.

21  (Doc. No. 22 at 1-10.) As a result of this conclusion, the Court granted Respondents' motion to

22  dismiss, found the Court need not reach the procedural grounds for dismissing twelve of Petitioner's

23  thirteen claims, and terminated the case. (*Id.* at 11.)

24  　　　　　[3]Lima's previous federal petition, case 05-cv-1959-W (BLM), was dismissed without prejudice, because Petitioner

25  failed to allege exhaustion of state judicial remedies in all of his claims. The district judge instructed Lima to file a first amended petition by December 23, 2005 in order to have his case reopened. Lima attempted to file a first amended petition

26  in September 2006, but it was rejected by the district court judge on discrepancy for being untimely.

　　　　　[4] Lima's Petition was dismissed without prejudice for failing to state a cognizable federal claim. (Doc. No. 3.)

27  The district judge instructed Petitioner that in order to have the case reopened, he had to file a First Amended Petition no later than December 30, 2006. (*Id.*)

28  　　　　　[5]Petitioner is entitled to the benefit of *Houston*'s mailbox rule to determine the filing date of his federal habeas petition.

06-CV-02388-AJB (BGS)

On September 28, 2007, Petitioner filed a notice of appeal to the United States Court of Appeals for the Ninth Circuit. (Doc. No. 24 at 1.) On May 14, 2009, the Ninth Circuit entered a decision on Petitioner's appeal. (Doc. No. 40 at 4.) The Ninth Circuit reversed the district court's decision that Petitioner's First Amended Petition was untimely. (*Id.*) The Ninth Circuit found Petitioner is entitled to statutory tolling sufficient to render the First Amended Petition filed within the one-year statute of limitations. (*Id.*) The Ninth Circuit then remanded the case to the district court to proceed with the First Amended Petition on the merits, leaving the district court to resolve the question of whether any of Petitioner's claims are procedurally defaulted under *Dixon*. (*Id.*)

On October 30, 2009, Respondents filed an Answer to Petitioner's First Amended Petition ("Answer") with an accompanying Memorandum of Points and Authorities in Support of Answer ("Memo"). (Doc. Nos. 44 & 44-1.) Petitioner filed a Traverse to the Answer ("Traverse") on January 6, 2010. (Doc. No. 50.) On January 29, 2010, the Court requested additional briefing from Respondents on their "ultimate burden" of establishing the adequacy of the *Dixon* bar and the merits of claims 1-9 and 11-13. (Doc. No. 51.) Respondents filed their Supplemental Memorandum of Points and Authorities in Support of Answer ("Supplemental Memo") on March 11, 2010. (Doc. No. 54.) Petitioner filed a Supplemental Traverse on April 30, 2010. (Doc. No. 58.)

### III. Discussion

Petitioner has alleged the following thirteen grounds for relief in his First Amended Petition: (1) the court denied petitioner self-representation, in violation of the Constitution (citing *Faretta v. California*, 422 U.S. 806; U.S. Const. amend XIV; U.S. Const. amend VI); (2) the appellate courts failed to instruct the lower courts on how to proceed upon reversal, in violation of the Constitution, due process of law, and the Fourteenth Amendment (citing 28 U.S.C. § 2106); (3) erroneous admission at trial of evidence pertaining to his robbery conviction, in violation of the Sixth, Eighth, and Fourteenth Amendments; (4) the prosecution engaged in misconduct by withholding the officers' written statements (citing *Napue* v. *Illinois*, 360 U.S. 264 (1959); *United States v. Rivera Pedin*, 861 F.2d 1522 (11th Cir. 1988); *Pyle v. Kansas*, 317 U.S. 213 (1942)); (5) Petitioner was denied his right to present a defense when the court denied discovery of San Diego Police Department Practices and Policies, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments (citing *Brady v.*

*Maryland*, 373 U.S. 83 (1963); *United States v. Bagley,* 473 U.S. 667 (1985); *Pyle,* 317 U.S. at 213; *Mooney v. Holohan*, 294 U.S. 103 (1935)); (6) the court erred by giving the instruction regarding robbery still in progress in Petitioner's second trial, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments (citing *Ashe,* 297 U.S. at 436); (7) the court erred by giving the instruction regarding fleeing the police, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments (citing *Ashe,* 297 U.S. at 436); (8) the prosecution engaged in misconduct by offering a special instruction, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments (citing *Ashe,* 297 U.S. at 436); (9) the prosecution committed prejudicial error by telling the jurying, during closing, it could convict Petitioner for first or second degree murder, even though the jury was not given a verdict form for second degree murder, or a lesser included offense instruction (citing U.S. Const. amend V; U.S. Const. amend VI; U.S. Const. amend VIII; U.S. Const. amend XIV); (10) the "provocative act" doctrine is illegal, because the element of "actus reus" and/or "mens rea" could not be satisfied (citing U.S. Const. amend V; U.S. Const. amend VI; U.S. Const. amend VIII; U.S. Const. amend XIV); *Schad,* 501 U.S. at 624; *Richardson*, 526 U.S. at 813); (11) the court improperly punished Petitioner under an over broadly-defined statute (*citing* U.S. Const. amend VI; U.S. Const. amend VIII; U.S. Const. amend XIV; *Schad,* 501 U.S. at 624; *Richardson*, 526 U.S. at 813); (12) marking out "manslaughter" in the homicide jury instruction constituted prejudicial error, in violation of his Fifth, Sixth, Eighth, and Fourteenth Amendment rights; and (13) the trial court violated his rights under the Sixth, Eighth, and Fourteenth Amendments by refusing to assist the jury on a point of law. (Doc. No. 4 at 6-22.)

Respondents contend that twelve of Petitioner's thirteen grounds for relief are procedurally defaulted. Respondents argue Petitioner did not properly raise and exhaust his direct appeal claims and instead raised and exhausted them on state habeas corpus, which is procedurally improper under California habeas corpus rules. (Doc. No. 44 at 3.) Respondents assert that this is an independent and adequate ground to bar federal relief on all but Ground Ten of Petitioner's First Amended Petition. (*Id.*) Additionally, Respondents argue that Ground One and Ground Five are procedurally defaulted because Petitioner did not properly exhaust the claims, as he did not raise either one of these claims on direct appeal to the California Supreme Court in a petition for review. (Doc. No. 44-1 at 5.)

1  Respondents assert that even if Grounds 1-9 and 11-13 are not procedurally defaulted, they fail on the

2  merits.  (Doc. No. 54 at 8-16.)  Respondents also argue that Ground Ten, although not procedurally

3  defaulted, fails on the merits.  (Doc. No. 44 at 3.)

4      **A. Procedural Bar**

5          Under the doctrine of procedural default, a petitioner who has defaulted on his claims in state

6  court is barred from raising them in federal court, so long as the default is "pursuant to an independent

7  and adequate state procedural rule." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991).  The state rule

8  is only "adequate" if it is "well-established and consistently applied." *Bennett v. Mueller,* 322 F.3d

9  572, 583 (9th Cir. 2003) ("[t]o be deemed adequate, the state law ground for decision must be well-

10 established and consistently applied").  The state rule must also be "independent" in that it is not

11 "interwoven with federal law." *Park v. California,* 202 F.3d 1146, 1152 (9th Cir. 2000) (quoting

12 *Michigan v. Long,* 463 U.S. 1032, 1040-41 (1983)).  If the federal court finds an independent and

13 adequate state procedural ground, "federal habeas review is barred unless the prisoner can demonstrate

14 cause for the procedural default and actual prejudice, or demonstrate that the failure to consider the

15 claims will result in a fundamental miscarriage of justice." *Noltie v. Peterson,* 9 F.3d 802, 804-05 (9th

16 Cir. 1993); *Coleman,* 501 U.S. at 750.

17      **1.** *Dixon*

18          Respondents argue that the California Supreme Court imposed a procedural bar to Petitioner's

19 1-9 and 11-13 claims when it cited the rule set forth in *Dixon* in its denial of Petitioner's state habeas

20 petition.  (Doc. Nos. 44 at 3 & 44-1 at 2-6.)  The *Dixon* bar prohibits the use of habeas corpus as a

21 substitute for the appeal process and explains that "in the absence of special circumstances

22 constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors

23 could have been, but were not, raised upon a timely appeal from a judgment of conviction." *Dixon,*

24 41 Cal. 3d at 759.

25          Procedural default is an affirmative defense, which must be pleaded and proven by the

26 government.  *See Bennett,* 322 F.3d at 586 (noting that, "because it is the State who seeks dismissal

27 based on the procedural bar, it is the State who must bear the burden of demonstrating that the bar is

28 applicable in this case that the state procedural rule has been regularly and consistently applied in

06-CV-02388-AJB (BGS)

habeas actions"). In response, the burden shifts to the habeas petitioner to place that defense in issue by alleging facts that demonstrate the inadequacy of the state procedure. *Id.* The ultimate burden of proof, however, is on the government. *Id.* The relevant time period for evaluating whether a state's procedural rule was regularly and consistently followed is the time of the purported default. *Calderon v. Bean*, 96 F.3d 1126, 1130 (9th Cir. 1996). "With respect to the *Dixon* rule, [The Ninth Circuit has] held that a relevant point of reference for assessing its application is the time at which the petitioner 'had an opportunity to raise the claims on direct appeal.'" *Fields v. Calderon,* 125 F.3d 757, 760-61 (9th Cir. 1997) (quoting *Calderon*, 96 F.3d at 1131). Here, Petitioner filed his direct appeal on March 31, 2003. The California Court of Appeal affirmed the judgment on April 14, 2004, and on July 28, 2004, the California Supreme Court denied his petition for review of one claim for relief, based on state law. Thus, the operative time for assessing the adequacy of the *Dixon* bar in this case is 2003-2004.[6]

     In the Court's Order Requiring Additional Briefing, the Court found Respondents satisfied their initial burden by asserting the *Dixon* bar and procedural default in the Answer. (Doc. No. 51 at 5.) The Court also found that Petitioner satisfied his interim burden by citing to federal cases that found that the *Dixon* bar was not consistently applied in the late 1990s and early 2000s. (*Id.* at 5-6.) As a result, the Court ordered Respondents to file a Supplemental Memorandum of Points and Authorities addressing Respondents' ultimate burden of proving the adequacy of the *Dixon* procedural bar.[7] (*Id.* at 6.)

     Respondents argue in their Supplemental Memo that the state court's citation to *Dixon* is an adequate ground to preclude federal relief, because the Supreme Court has held that a state procedural ruling is adequate if it was "firmly established and regularly followed." (Doc. No. 54 at 2-3, citing *Beard v. Kindler*, 130 S. Ct. 612, 617-18 (2009).) Respondents argue this language from *Beard* overrules *Bennett*'s adequacy standard requiring "the state law ground for decision [to be] well-established and consistently applied." (Doc. No. 54 at 3, citing *Bennett,* 322 F.3d at 583.) *Beard*,

---

[6] The Court notes that in its Order Requiring Additional Briefing, it found the relevant point of reference in this case as August 2006, when the California Supreme Court denied Petitioner's state habeas petition and asserted the *Dixon* bar. (Doc. No. 51 at 5). However, this appears incorrect under Ninth Circuit precedent, as Petitioner had the opportunity to raise his claims on direct appeal in 2003-2004, when his state appeals were pending.
     [7] Petitioner has not raised in his Traverse the issue of whether the *Dixon* bar is independent.

however, addressed the preclusive effect of a discretionary state procedural rule, namely one that an escaped felon forfeits any pending post-verdict motions. *See Beard*, 130 S. Ct. at 618. The Supreme Court in *Beard* specifically declined to "undertake '[a] new effort to state a standard for inadequacy,'" and noted the case was an "unsuitable vehicle for providing broad guidance on the adequate state ground doctrine." *Id.* at 619. Accordingly, *Bennett* remains the controlling standard for adequacy and the State of California must show that the *Dixon* bar is well-established and consistently applied.[8]

Respondents have not met their burden of demonstrating the *Dixon* bar is adequate, having been regularly and consistently applied in habeas actions in 2003-2004[9]. In evaluating whether a procedural bar is well-established and consistently applied, the federal court must look at the actual practice of state courts, and not just the rule as stated in the state court decisions. *Powell v. Lambert*, 357 F.3d 871, 879 (9th Cir. 2004). Because Respondents offer no evidence that California regularly and consistently applied the *Dixon* bar at the time of Petitioner's default in 2003-2004, they have not met their ultimate burden of proving adequacy.[10] *See Withern v. Alameida*, 2010 WL 424255 *7 (E.D. Cal. 2010) (finding the respondent had not met its burden of demonstrating the *Dixon* bar is adequate when petitioner had not raised claims in a state appeal decided in 2001); *Smith v. Clark,* 2010 WL 480968 *7 (C.D. Cal. 2010) (noting that respondent "cites to no Ninth Circuit or California case that has. . . held that the *Dixon* bar is both independent and adequate," regarding claims petitioner had not raised on direct appeal with the California Court of Appeal decision filed in 2007); *Dennis v. Brown*,

_____

[8] As Petitioner notes in his Supplemental Traverse, the terms "regularly follows" and "consistently applied" have been used interchangeably by courts in discussing the standard for adequacy. (Doc. No 58 at 4-5, citing *Ford v. Georgia*, 498 U.S. 411, 423-34 (1991); *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988); *Poland v. Stewart*, 169 F.3d 573, 577 (9th Cir. 1999); *Bennett*, 322 F.3d at 585.)

[9] The Ninth Circuit has held that the *Dixon* procedural bar was not well-established and consistently applied at least prior to 1993, and therefore, unable to serve as an independent and adequate state procedural bar prior to that time. The Ninth Circuit, however, has reserved the question of whether the *Dixon* bar can constitute an independent and adequate state procedural bar post-1993. *See Cooper v. Calderon,* 255 F.3d 1104, 1111 (9th Cir. 2001); *Park v. California*, 202 F.3d at 1152-53.

[10] Respondents argue, contrary to their ultimate burden, that Petitioner has not "cited any state decisions that have refused to apply *Dixon*." (Doc. No. 54 at 5-6.) The Court has already found that Petitioner has met his "modest" interim burden by "citing authority demonstrating inconsistent application of the rule." (Doc. No. 51 at 4.) As the Ninth Circuit has held, it is the government that bears the ultimate burden of proving adequacy, because "[i]t is the state, not the petitioner, . . . who has at its hands the records and authorities to prove whether its courts have regularly and consistently applied the procedural bar." *Bennett*, 322 F.3d at 585. Respondents do cite to California authority indicating the *Dixon* bar is an *available* procedural bar, but they do not cite consistent application of the bar in 2003-2004. (Doc. No. 54 at 5, citing *In re Seaton,* 34 Cal. 4th 193, 199-201 n.4 (2004).)

1   361 F.Supp.2d 1124, 1133 (N.D. Cal. 2005) (finding respondent failed to meet her burden of proving

2   that California's pretermitted bar to habeas relief was consistently applied in 1996).

3          Respondents argue if federal authority is relevant to their ultimate burden, Supreme Court

4   decisions such as *Teague v. Lane*, 489 U.S. 288 (1989), and *Duggar v. Adams,* 489 U.S. 401 (1989),

5   support the adequacy of the California *Dixon* bar.  The Court finds this argument unpersuasive, as

6   *Teague* and *Duggar* analyze Illinois and Florida law, which do not shed light on California state

7   courts' application of a California procedural rule.  Thus, these cases lend nothing to Respondents'

8   ability to meet their ultimate burden.  Accordingly, because the Court finds Respondents have failed

9   to meet their ultimate burden, the California Supreme Court's citation to *Dixon* does not constitute a

10  procedural bar to federal review of Petitioner's claims.

11          **2.  *O'Sullivan* and *Waltreus***

12          Respondents argue Ground One and Ground Five are also procedurally defaulted under both

13  *O'Sullivan* and *Waltreus*.  (Doc. No. 44-1 at 5; *see O'Sullivan v. Boerckel,* 526 U.S. 838 (1999); *In

14  re Waltreus*, 62 Cal.2d  218 (1965).)  Respondents concede that Petitioner raised arguments

15  resembling Ground One and Ground Five to the California Court of Appeal, but argue that because

16  these claims were not raised to the California Supreme Court, the claims are barred under *O'Sullivan*.

17  (Doc. No. 44-1 at 5.)  Additionally, Respondents assert Petitioner's failure to exhaust these claims on

18  state habeas corpus was procedurally improper under *Waltreus*.  (*Id.*)

19          Generally, applications for writs of habeas corpus that contain unexhausted claims must be

20  dismissed.  *See Rose v. Lundy*, 455 U.S. 509, 522 (1982).  Under *O'Sullivan v. Boerckel,* if the state's

21  appellate process includes discretionary review before the state's highest court, a federal habeas

22  petitioner ordinarily must file a petition for discretionary review to exhaust his claims. 526 U.S. at

23  845.  The petitioner must have raised the *very same* federal claims brought in the federal petition

24  before the state supreme court.  *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995).

25          Here, Petitioner presented Ground One and Ground Five to the California Supreme Court by

26  way of a state habeas petition.  (Doc. No. 6-14 at 3.)  Petitioner did not present these claims in his

27  direct appeal the California Supreme Court.  (Doc. No. 6-10 at 18.)  Therefore, under *O'Sullivan*,

28  Petitioner's failure to properly raise Ground One and Ground Five before the California Supreme

Court by including them in his petition for review may constitute a procedural default. 526 U.S. at 848; *Zichko v. Idaho*, 247 F.3d 1015, 1021–22 (9th Cir. 2001).  However, Petitioner has escaped the consequences of his failure by subsequently pursuing these new claims on state habeas.  *Park*, 202 F.3d at 1153.  "This is so because it can be fairly said under § 2254(c) that California, through its recognized exception to the *Dixon* rule, gave him the right 'to raise, by any available procedure, the question presented.'" *Id.* (citing 28 U.S.C. §2254(c.).)  Petitioner may have had no right to a review of his claims in the California Supreme Court, but, under *Dixon*, he did have a right to raise his claims before that court.  *Id.*  All §2254(c) requires is "that state prisoners give state courts a fair opportunity to act on their claims." *Id.*  In essence, Petitioner took advantage of California providing him a second chance to present his claims.  *Id.*; *see also Carpenter v. Ayers*, 548 F.Supp.2d 736, 745 (N.D.Cal.2008) ("nowhere in *Boerckel* does the Supreme Court indicate that it is announcing, for the first time, a federal procedural default rule separate from the established procedural default jurisprudence").  Accordingly, the Court finds Petitioner did not procedurally default Ground One and Ground Five under *O'Sullivan* as he presented them to the California Supreme Court on collateral review.

Under *Waltreus*, a habeas corpus petition cannot serve as a second appeal, when that claim has been raised and rejected on direct appeal.  *Waltreus*, 62 Cal.2d at 225.  Thus, the California Supreme Court will not review any claims in a state habeas petition that were raised on direct appeal.  *Hill v. Roe*, 321 F.3d 787, 789 (9th Cir. 2002).  The Supreme Court has held that *Waltreus* is neither a ruling on the merits nor a denial on procedural grounds, and therefore, *Waltreus* does not affect a prisoner's federal constitutional claim.  *Ylst*, 501 U.S. at 805.  Accordingly, *Waltreus* does not bar federal court review.[11]  *Hill,* 321 F.3d at 789; *c.f. Forrest v. Vasquez,* 75 F.3d 562 (9th Cir.1996).  Because *Waltreus* merely bars relitigation of claims in state court, Ground One and Ground Five are not procedurally barred by *Waltreus* and this Court is able to look through the order by the California Supreme Court denying Petitioner's habeas petition to the reasoned opinions of the California Superior Court and California Court of Appeal denying these claims on the merits.  *See Ylst*, 501 U.S. at 805-06.

---

[11]This case is distinguishable from *Forrest v. Vasquez*, 75 F.3d 562 (9th Cir. 1996), where the Ninth Circuit found that under the circumstances of that case, a citation to *Waltreus* showed that the basis of the California Supreme Court's denial of a habeas petition was procedural default.  In *Forrest*, the petitioner failed to timely file a petition for review of his direct appeal in the California Supreme Court, and his application for relief from default was denied by the California Supreme Court.  *Id.* at 563.  In this case, there is no order finding claims one and five defaulted on direct appeal.

06-CV-02388-AJB (BGS)

1    Because the Court finds no applicable procedural bar to Petitioner's claims in his federal

2    petition, this Court will consider Petitioner's claims on the merits.

3    **B.  Standard of Review**

4    The First Amended Petition is governed by the Anti-Terrorism and Effective Death Penalty

5    Act of 1996 ("AEDPA").  *See Lindh v. Murphy,* 521 U.S. 320 (1997).  Under AEDPA, a habeas

6    petition will not be granted with respect to any claim adjudicated on the merits by the state court

7    unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable

8    application of clearly established federal law; or (2) resulted in a decision that was based on an

9    unreasonable determination of the facts in light of the evidence presented at the state court proceeding.

10   28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002).

11   In deciding a state prisoner's habeas petition, a federal court is not called upon to decide

12   whether it agrees with the state court's determination; rather, the court applies an extraordinarily

13   deferential review, inquiring only whether the state court's decision was objectively unreasonable.

14   *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

15   Additionally, the state court's factual determinations are presumed correct, and Petitioner carries the

16   burden of rebutting this presumption with "clear and convincing evidence." 28 U.S.C.A. § 2254(e)(1).

17   A federal habeas court may grant relief under the "contrary to" clause if the state court applied

18   a rule different from the governing law set forth in Supreme Court cases, or if it decided a case

19   differently than the Supreme Court on a set of materially indistinguishable facts.  *Bell v. Cone*, 535

20   U.S. 685, 694 (2002).  The court may grant relief under the "unreasonable application" clause if the

21   state court correctly identified the governing legal principle from Supreme Court decisions but

22   unreasonably applied those decisions to the facts of a particular case.  *Id.*  Additionally, the

23   "unreasonable application" clause requires that the state court decision be more than incorrect or

24   erroneous; to warrant habeas relief, the state court's application of clearly established federal law must

25   be "objectively unreasonable."  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

26   Under the standard set forth in § 2254(d)(2), habeas relief is available only if the state court

27   decision was based upon an unreasonable determination of the facts. *Miller-El v. Dretke*, 545 U.S.

28   231, 240 (2005) (*Miller-El II*). A state court decision "based on a factual determination will not be

overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (*Miller-El I*); *see Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004). In considering a challenge under 2254(d)(2), state court factual determinations are presumed to be correct, and a petitioner bears the "burden of rebutting this presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Miller-El II*, 545 U.S. at 240. However, it is only the state court's factual findings, not its ultimate decision, that are subject to 2254(e)(1)'s presumption of correctness. *Miller-El I*, 537 U.S. at 341-42. ("The clear and convincing evidence standard is found in § 2254(e)(1), but that subsection pertains only to state-court determinations of factual issues, rather than decisions.").

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision. *Ylst v. Nunnemaker,* 501 U.S. 797, 804 (1991). In applying federal habeas standards of review, the court must look to the last reasoned decision of the state court as a basis of judgment, which might not necessarily be the highest court. *Benson v. Terhune*, 304 F.3d 874, 880 (9th Cir. 2002). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court Law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Lockyer*, 538 U.S. at 75-76); accord *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). A state court, however, need not cite Supreme Court precedent when resolving a habeas corpus claim. *Early,* 537 U.S. at 8. "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]," the state court decision will not be "contrary to" clearly established federal law. *Id.*

AEDPA requires federal habeas courts to accord deference to a state court's adjudication of federal issues. *Lounsbury v. Thompson*, 340 F.3d 998 (9th Cir. 2003). Here, neither the California Supreme Court nor the California Court of Appeal reached the merits of all of Petitioner's claims. Thus, there is no decision on Grounds 3-4, 6-9, and 11-13 to which to accord deference. Accordingly, it is proper to relax AEDPA's strict standard of review. When a state court has not reached the merits

1   of a properly raised issue, the question is reviewed *de novo*. *Pirtle v. Morgan*, 313 F.3d 1160, 1167

2   (9th Cir. 2002); *Reynoso v. Giurbino*, 426 F.3d 1099, 1109 (9th Cir. 2006).

3       **C. Merits of Petitioner's Thirteen Grounds**

4           **1. Ground One**

5           In Ground One, Petitioner claims his Sixth and Fourteenth Amendment rights were violated

6   when the trial court denied him his right to self-representation. (Doc. No. 4 at 6.)  Lima contends that

7   upon the reversal of his first conviction and remand to the trial court, he made a *Marsden*[12] motion to

8   relieve counsel and a *Faretta* motion to proceed in pro per, which were denied by the trial judge. (*Id.*)

9   Petitioner asserts the denial of the right to represent himself specifically affected the outcome of his

10  trial. (*Id.*)  Respondents argue this claim should be denied because it was properly rejected on state

11  habeas and on direct appeal. (Doc. No. 54 at 15-16.)  Petitioner raised this claim in his state habeas

12  petitions following his retrial.  Respondents argue that in reviewing Lima's state habeas petition, the

13  superior court denied him relief on this claim because it found no record that Petitioner moved to

14  replace his appointed counsel before his second trial.  Respondents also point to the superior court's

15  decision noting that Petitioner made a *Faretta* motion at the first trial, it was denied, and then

16  reviewed and denied in his first appeal.   The superior court found that because he litigated the denial

17  of his *Faretta* motion from his first trial on direct appeal, he could not use a state petition to serve as

18  a second appeal on that issue. (*Id.*)

19          The Due Process Clause of the Constitution guarantees protection from the state forcing a

20  lawyer upon a criminal defendant who is literate, competent, and understanding in voluntarily

21  exercising his informed free will to dismiss counsel.  *Faretta,* 422 U.S. at 835; U.S. Const. amend

22  XIV; U.S. Const. amend XI.  A defendant may make a *Faretta* motion requesting the opportunity to

23  represent himself and forgo counsel.  *Faretta*, 422 U.S. at 835.  A defendant's mere expression of

24  dissatisfaction with counsel does not require the court to find inadequate representation; therefore,

25  denial of the motion is not an abuse of discretion, unless the defendant can show that failure to

26  

---

27        [12]*People v. Marsden*, 2 Cal.3d 118 (1970), is a California case dealing with a trial judge's obligations

28  in deciding motions to substitute appointed counsel. Petitioner does not challenge the trial court's denial of his *Marsden* motion.

1   discharge the attorney would substantially impair the right to assistance of counsel. *People v. Welch*,

2   20 Cal.4th 701, 728 (1999); *People v. Webster,* 54 Cal. 3d 411, 435 (1991).

3         The California Supreme Court was silent as to the merits of this ground in its denial of the

4   state habeas petition, thus this Court will look through to the decision of the California Superior Court.

5   *See Ylst,* 501 U.S. at 804.  In the state habeas petition denial, the Superior Court of California found

6   no evidence of Petitioner's motion to represent himself in the second trial court.  (Doc. No. 6-13 at

7   5.)  The court noted no such motion was found in the court file, attached to the petition, or in the

8   Minute Orders.  (*Id.* at 6.)  This Court will give deference to the state court's finding, and thus review

9   whether the decision was based on an objectively unreasonable determination of the facts in light of

10  the evidence presented in the state court proceeding.  *See Miller-El I,* 537 U.S. at 340.  Because no

11  record of Petitioner making a *Faretta* motion before his retrial could be found by the state court nor

12  was presented to the state court by Petitioner, this Court finds the state court's decision to deny relief

13  on this claim was not based upon an objectively unreasonable determination of the facts.[13]  This Court

14  will not address the denial of his *Faretta* motion in the first trial, as Petitioner has not challenged this

15  denial in his Amended Petition.  Accordingly, Ground One should be **DENIED**.

16              **2. Ground Two**

17         In Ground Two, Petitioner claims the court of appeal violated his due process rights by

18  failing to adequately instruct the trial court on which principles to apply on retrial. (Doc. No. 4 at 7.)

19  Petitioner asserts this lack of instruction left the trial court at a loss as to how to proceed with regards

20  to jury instructions at retrial, and thus his retrial was fundamentally unfair and violated his due process

21  rights.  (Doc. No. 58 at 16.)  Respondents assert Petitioner's pleading is insufficient, as he does not

22  indicate what should or should not have occurred at the trial.  (Doc. No. 54 at 17.)  Further

23  Respondents argue that even if there was an error, Petitioner did not suffer any prejudice.  (*Id.*)  The

24  California Supreme Court was silent as to the merits of this ground in its denial of the state habeas

---

25        [13]Petitioner has attached a letter from the superior court dated October 24, 2005 to support Ground One.  Although

26  this evidence was not presented in the superior court proceeding as it post-dates the superior court's May 13, 2005 decision,
    the Court notes that the letter only further supports the superior court's decision and does not aid Petitioner.  The letter

27  states, "[a]nother extensive review of the court files for your criminal matter indicates you filed a written Marsden motion
    with the court on August 12, 2002, asking the court to relieve your public defender . . . [n]either on this date, nor any

28  subsequent date during your retrial, is there a record that you made a request to proceed in pro per." (Doc. No. 4 at 88.)
    Petitioner has offered no other evidence that he made a *Faretta* motion before his retrial.

petition, thus this Court will look through to the decision of the California Superior Court. *See Ylst,* 501 U.S. at 804.  This Court will give deference to the state court's finding, and thus review whether the decision was contrary to or involved an unreasonable application of federal law. *See Williams,* 529 U.S. at 403.

In its denial, the California Superior Court, citing to *Auto Equity Sales v. Superior Court*, 57 Cal.2d 450, 455 (1962), held that even if the court agreed with Petitioner's claim that the first appellate decision failed to instruct the second trial court, it would not overrule or alter a higher court's decision regarding retrial instructions.  (Doc. No. 6-13 at 5.)  The superior court, addressing Petitioner's concerns about the confusion by the second trial court after the remand from the first appeal, also noted that "once the uncertainty was clarified, a full trial followed by a full appeal took place.  This would strongly indicate that there was no bewilderment once that second trial began." (*Id.*)

In determining whether habeas relief must be granted due to an unconstitutional trial error, the harmless-error standard must be used.  *Brecht v. Abrahamson,* 507 U.S. 619, 622 (1993).  Under this standard, petitioners are entitled to relief only if they can establish that "actual prejudice" resulted from error.  *Id.* at 1713.

In this case, Petitioner argues the court of appeal, in its opinion, did not properly instruct the trial court as to the proper jury instructions.  (Doc. No. 58 at 16.)  Petitioner cites *Estelle v. McGuire* for both the proposition that due process requires the jury to be properly instructed and the trial should be conducted under the principles articulated from the court of appeals.  (*Id.*)  However, *Estelle* does not stand for the proposition that the court of appeal is required to instruct the court on retrial.  *See Estelle v. McGuire,* 502 U.S. 62, 72 (1991).  Petitioner points to the trial court's express difficulty in coming to a consensus on the jury instructions.  (Doc. No. 58 at 16.)  Under the harmless-error standard, Petitioner fails to allege how the trial court's difficulty in instructing the jury actually resulted in any jury instructional error; Petitioner also fails to articulate how any error might be prejudicial.  (*Id.*)  Additionally, Petitioner fails to cite any authority that requires an appellate court to instruct a trial court as to jury instructions when remanding a case.  The superior court's denial of this claim was not contrary to nor an unreasonable application of federal law, as it found, even if the

1   court of appeal should have instructed the trial court on how to proceed on remand, there was no

2   bewilderment about how to proceed as shown by the full trial and appeal that followed and therefore

3   no prejudice.

4          Accordingly, Ground Two should be **DENIED**.

5                              **3. Ground Three**

6          In Ground Three, Petitioner contends he is entitled to relief based upon erroneous admission

7   of evidence at his retrial in violation of his due process rights.  (Doc. No. 4 at 8.)  Petitioner asserts

8   that during the retrial the jury was able to hear and consider "the allegations of the robbery as charged

9   when the victims testified."  (*Id.*)  Petitioner argues that the admission of this evidence tainted and

10  confused the jury and that the prosecution relied heavily on this evidence to elevate the case to a first

11  degree murder.  (*Id.*)   In his Amended Petition, Petitioner cites the jury instruction for "Robbery-

12  Defined" that was given at his retrial to support this claim.  (*Id.*, citing Lodgment 4 Vol. 2 at 306.)

13  Respondents contend that under California law, this evidence was unquestionably relevant and that

14  Petitioner has not demonstrated how he suffered any prejudice from his unspecified and vague

15  allegations regarding evidence for crimes for which he had been convicted.  (Doc. No. 54 at 10.)

16         This Court will review Ground Three *de novo*, as the state court did not reach the merits and

17  therefore there is no reasoned state court decision to which to accord deference.  *See Pirtle*, 313 F.3d

18  at 1167.  This Court is unclear as to the specific admission of testimony or evidence by the second trial

19  court that Petitioner challenges.  Petitioner only cites to testimony of victims concerning the

20  allegations of the robbery and to the jury instruction given defining robbery.  (Doc. No. 4 at 8.)

21  Petitioner has not addressed the merits of Ground Three in either his Traverse or Supplemental

22  Traverse.  (*See* Doc. Nos. 50 & 58.)

23         Petitioner broadly asserts that the admission into evidence of victim testimony concerning

24  the robbery violated his due process rights. However, a state court's evidentiary ruling is not subject

25  to federal habeas review unless the ruling violates federal law, either by infringing upon a specific

26  federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair

27  trial guaranteed by due process. *See Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Drayden v. White*, 232

28  F.3d 704, 710 (9th Cir. 2000) ("The improper admission of evidence does not violate the Due Process

Clause unless it is clearly prejudicial and 'rendered the trial fundamentally unfair.'") (citation omitted); *Spivey v. Rocha*, 194 F.3d 971, 977 (9th Cir. 1999) ("A federal habeas court cannot review questions of state evidence law."); *Jammal v. Van de Kamp*, 926 F.2d 918, 919–20 (9th Cir. 1991) ("Only if there are no permissible inferences the jury may draw from the evidence can its admission violate due process."). Accordingly, a federal court cannot disturb a state court's decision to admit evidence on due process grounds unless the admission of the evidence was "arbitrary or so prejudicial that it rendered the trial fundamentally unfair." *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995); *see also Larson v. Palmateer*, 515 F.3d 1057, 1066 (9th Cir.2008); *Drayden*, 232 F.3d at 710; *Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir. 1986). In addition, in order to obtain habeas relief on the basis of evidentiary error, petitioner must show that the error was one of constitutional dimension and that it was not harmless under *Brecht v. Abrahamson*, 507 U.S. 619 (1993). Thus, in order to grant relief, the habeas court must find that the error had "'a substantial and injurious effect' on the verdict." *Dillard v. Roe*, 244 F.3d 758, 767 n. 7 (9th Cir. 2001) (quoting *Brecht*, 507 U.S. at 623).

In his first jury trial, Petitioner was convicted of conspiracy to commit residential robbery and residential robbery. (Doc. No. 6-9 at 1.) At retrial on the first degree murder charge, the prosecution called witnesses who testified to the facts of the robbery leading up to the high speed chase that resulted in the victim's death. (*See* Lodgment 6 Vol.1 at 116-182.) Petitioner's counsel made a motion to exclude evidence of the robbery, which was denied by the trial court judge. (Lodgment 4 Vol. 2 at 363; Lodgment 5 Vol. 1 at 97-103.) Under California Evidence Code section 210, relevant evidence is defined as evidence tending to prove any disputed fact of consequence. Cal. Evid. Code § 210. Under California Evidence Code section 351, "except as otherwise provided by statute, all relevant evidence is admissible." Cal. Evid. Code §351. After hearing argument from counsel, the trial court judge in denying Petitioner's motion found that the jury had a right to hear "what's going on between the two defendants in this home and the background so they can accurately assess what the evidence is as it relates to provocative act and the degree of the homicide if, in fact, there is a homicide that they're responsible for." (Lodgment 5 Vol. 1 at 103.) At retrial, evidence of the robbery was relevant to prove the crime of provocative act murder, as the jury had to find Petitioner committed the crime of robbery , had the specific intent to commit the crime of robbery, and

1   that the robbery was still in progress in order to find Petitioner guilty of the crime of provocative act

2   murder.  (Lodgment 4 Vol. 2 at 290, 295, 308.)  Therefore, the trial court did not erroneously admit

3   evidence of the underlying robbery because it was evidence tending to prove a disputed fact of

4   consequence.

5           After reviewing the record, the Court finds that even if admission of evidence of the robbery

6   that triggered the high speed chase was erroneous, such admission of the evidence was not so arbitrary

7   or so prejudicial to render the trial fundamentally unfair.  Petitioner has made no showing of how the

8   admission of this evidence had a substantial and injurious effect on the verdict.  The jury could draw

9   from the admitted evidence the permissible inference that Petitioner had the specific intent to commit

10  the robbery, which intent was required to convict Petitioner of provocative act murder.  Therefore, the

11  Court finds the second trial court's decision to allow this evidence did not violate Petitioner's federal

12  due process rights.  Accordingly, Ground Three should be **DENIED**.

13                          **4. Ground Four**

14          In Ground Four, Petitioner alleges prosecution misconduct in violation of the Sixth, Eighth,

15  and Fourteenth Amendments.  (Doc. No. 4 at 9.)  Petitioner contends that during the trial, the

16  prosecutor allowed the introduction of false testimony by police officers in violation of *Napue v.*

17  *Illinois*, 360 U.S. 264, 269 (1959) and *Pyle v. Kansas*, 317 U.S. 214 (1942).  (*Id.*; Doc. No. 58 at 16.)

18  Petitioner alleges that the prosecution was fully aware of the three police officers' written statements

19  written after the high speed pursuit and that all three police officers' testimony conflicts with these

20  police reports.  (Doc. No. 4 at 9.)  Respondents argue that Petitioner has identified at most

21  inconsistencies in the evidence, but has not alleged that the prosecutor knowingly introduced false

22  testimony.  (Doc. No. 54 at 11.)  This Court will review Ground Four *de novo*, as the state court did

23  not reach the merits, thus there is no state court decision to which to accord deference.  *See Pirtle*, 313

24  F.3d at 1167.

25          It is well settled that a conviction obtained using knowingly perjured testimony violates due

26  process (*Mooney v. Holohan*, 294 U.S. 103, 112 (1935)), and "must be set aside if there is any

27  reasonable likelihood that the false testimony could have affected the jury's verdict." *United States*

28  *v. Bagley*, 473 U.S. 667, 680 n. 9 (1985); *Morales v. Woodford*, 388 F.3d 1159, 1179 (9th Cir. 2004)

1   ("The due process requirement voids a conviction where the false evidence is 'known to be such by

2   representatives of the State.' ") (quoting *Napue v. Illinois*, 360 U.S. 264, 269(1959)).  Relief based

3   on the introduction of perjured testimony at trial is available only if the testimony was actually false.

4   *Jackson v. Brown*, 513 F.3d 1057, 1071 (9th Cir. 2008).  In addition, the prosecution must have

5   actually known or should have known that the testimony was false. *Id.*; *see also Morales*, 336 F.3d

6   at 1151–52 ("The essence of the due process violation is misconduct by the government, not merely

7   perjury by a witness.") (citing *Napue*, 360 U.S. at 491–92) (overruled on other grounds).  In sum, if

8   the prosecution used perjured testimony that the prosecutor knew or should have known was false, and

9   the testimony is material, that is, reasonably likely to have affected the verdict, the conviction must

10  be reversed. *See United States v. Agurs*, 427 U.S. 97, 103 (1976); *Jackson*, 513 F.3d at 1075–76.

11         In support of his claim of prosecutorial misconduct, Petitioner alleges discrepancies between

12  police officers' written reports and investigators' written reports and the trial testimony of police

13  officers regarding the high speed chase.  (Doc. No. 4 at 9-11.)  Petitioner mainly focuses on

14  conflicting versions of whether the Bronco (the vehicle Petitioner was driving during the chase)

15  stopped at the intersection of Camino Ruiz and Mira Mesa Blvd. before making a right turn onto Mira

16  Mesa Blvd., whether the Bronco side-swiped a Ford F-150 pickup truck at the same intersection, and

17  whether the Bronco almost collided with a vehicle in the intersection between two shopping malls.

18  (*Id.*)

19         Petitioner argues that during trial officers Burow, Moller, and Glazewski testified that the

20  Bronco stopped at the intersection of Camino Ruiz and Mira Mesa Blvd, but that their testimony

21  conflicts with an investigation follow-up report number FA1199 and with their own hand-written

22  reports regarding the chase.  (Doc. No. 4 at 8-9.)  Petitioner asserts that the written report fails to state

23  the stop at this intersection.  (*Id.* at 9.)  At retrial, Officer Burow testified that at the intersection of

24  Camino Ruiz and Mira Mesa Blvd. the Bronco was blocked by a truck in front of it and stopped at the

25  intersection for approximately 12 seconds before pulling forward by driving partially on the sidewalk.

26  (Lodgment 6 Vol. 1 at 215-17, 221, 223-24.)  Officer Glazewski testified at the retrial that at the

27  intersection of Camino Ruiz and Mira Mesa Blvd. the Bronco was stopped for approximately 20

28  seconds because he was blocked by traffic that was at a standstill, specifically a utility truck of some

sort. (Lodgment 6 Vol. 3 at 490.) Officer Glazeski testified that he possibly said over the radio to the dispatcher that the Bronco was stopped at the intersection, but the dispatcher's typed account did not log in such a statement. (*Id.* at 494-96.) Officer Glazewski also testified that after stopping for approximately 20 seconds, the Bronco went up onto the sidewalk, went around the utility truck, and clipped the utility truck as it was passing on the right-hand side. (*Id.* at 496.) Officer Moller testified at the retrial that the Bronco stopped at the intersection of Camino Ruiz and Mira Mesa Blvd. for approximately 8 seconds because traffic was very congested. (*Id.* at 411-14.) Officer Moller testified that after the Bronco stopped it drove on the sidewalk around traffic and turned right onto Mira Mesa Blvd. (*Id.* at 414.)

Petitioner argues that the officers' testimony regarding this stop conflicts with the investigation follow-up report number FA1199 pages 4, 9, and 25. (Doc. No. 4 at 9-10.) Page 4 of the follow-up report includes the investigator's summary of an on-scene interview with Officer Moller. (Lodgment 4 Vol. 1 at 88.) The summary states that according to Officer Moller, "[a]s the supect's vehicle approached the intersection of Camino Ruiz and Mira Mesa Blvd, the suspect drove on the sidewalk in order to go around the traffic." (*Id.*) The investigator's follow-up report states on page 9 that "[a]s the suspect's vehicle was approaching Mira Mesa Blvd it struck a vehicle in traffic damaging the vehicle's mirror." (*Id.* at 93.) Page 25 of the investigator's follow-up report is an interview investigator Hernandez conducted with Officer Burow. (*Id.* at 107-110.) Officer Burow stated during the interview that, "[a]s we approached Camino Ruiz and Mira Mesa blvd, I noticed cars in the left lane. The Bronco pulled behind a truck and was trying to squeeze past him to go westbound Mira Mesa. The Bronco drove on the sidewalk." (*Id.* at 109.)

Petitioner also asserts that the testimony of officers Glazewski and Moller at trial conflicts with their own reports following the chase. (Doc. No. 4 at 9-10.) Officer Glazewski's hand-written report states:

> Traffic was backed up the intersection of Mira Mesa Bl and Camino Ruiz. Vehicles were stopped at the red light facing s/b on Camino Ruiz. The far right lane only had one vehicle waiting and it was a white utility pu truck. The Ford Bronco drove up on the sidewalk of the n/w corner of Mira Mesa Bl and Camino Ruiz in order to go around the white pick-up truck.

1    (Lodgment 4 Vol. 1 at 44.) Officer Moller's statement following the chase states, "the suspect vehicle

2    proceeded southbound on camino ruiz until he was about 50 to 75 feet from the intersection of mira

3    mesa blvd and camino ruiz.  The Bronco was blocked in traffic, and proceeded to drive s/bound on

4    the sidewalk of the west curb line."  (*Id.* at 50.)  Officer Moller's hand-written report states, "the

5    suspect vehicle got stuck in traffic about 75 feet north of Mira Mesa Blvd.  The suspect drove onto

6    the sidewalk s/b and then drove w/b on 8300 Mira Mesa Blvd."  (*Id.* at 52.)

7         After reviewing the testimony at trial and the investigator's follow-up report and the officers'

8    reports, the Court finds Petitioner has not established that any testimony regarding the stop was in fact

9    perjured or false.  *See Jackson,* 513 F.3d at 1071. At most, the reports omit that the Bronco came to

10   a complete stop while stuck behind traffic at the intersection of Camino Ruiz and Mira Mesa Blvd.

11   The reports do note that traffic was backed up at the intersection and that the Bronco was stuck in

12   traffic.  Minor inconsistencies between the reports and live testimony do not support a finding of

13   perjury.  Furthermore, given the above testimony at retrial regarding the stop and the police reports,

14   the prosecutor did not know nor should have known that the offered testimony was false.  *Id.*

15        Petitioner also argues in support of Ground Four that officer Glazewski's testimony

16   regarding a near collision differs from witness accounts and detective Hernandez's investigator's

17   follow-up report. (Doc. No. 4 at 10.)  Officer Glazewski testified at the retrial that after the Bronco

18   turned onto Mira Mesa Blvd. from Camino Ruiz, it went through a red light at the intersection at the

19   Mira Mesa mall and barely missed a white truck's rear end that was crossing the intersection on the

20   green light. (Lodgment 6 Vol. 3 at 498.)  Officer Glazewski's hand-written report notes the same near

21   collision of the Bronco with a white truck at the mall entry intersection.  (Lodgment 4 Vol. 1 at 44.)

22   The investigator's follow-up report notes that Hernandez advised officer Vermillion when receiving

23   a report with another completed time-position analysis that "Officer Glazewski was positive there was

24   another vehicle in the intersection." (Lodgment 4 Vol. 1 at 92.)  Officer Vermillion's memorandum

25   regarding the fatal collision notes that  Hernandez interviewed several witnesses that stated the victim

26   was the first person at the limit line waiting to exit the mall property and that "this information is

27   contrary to Officer Glazewski's account regarding another vehicle."  (*Id.* at 122.)

28

1    After reviewing the testimony and police reports, the Court finds that Petitioner has not

2    established Officer Glazewski's testimony regarding the near miss of a white pick-up truck was false

3    or perjurious.  *See Jackson,* 513 F.3d at 1071.  Officer Glazewski's testimony did not change from his

4    written statement regarding the incident and was simply a different account than other witnesses on

5    the scene.  At the time of trial, Officer Glazewski was subject to cross-examination and Petitioner was

6    able to call rebuttal witnesses.  The fact that one witness's testimony presents a different account of

7    a high speed chase through mall traffic does not meet Petitioner's burden of showing that this

8    testimony was false or that the prosecutor knew or should have known that it was false.  *Id.*

9    Finally, Petitioner argues the prosecutor allowed false testimony that the Bronco side-swiped

10   a truck and then incorporated comments about the side-swiping into her closing argument.  (Doc. No.

11   4 at 11.)  Petitioner cites to a paint analysis to support his position that the testimony that the Bronco

12   side-swiped a vehicle was false.  (*Id.*)  During the first trial, the prosecutor offered a stipulation that

13   the "Navy Criminal Intelligence Service Regional Forensic Laboratory conducted a test and

14   determined that of the samples they tested, there was no paint found from the Bronco on the F-150

15   belonging to Michael Williams; and likewise, paint compared from the rearview mirror on the Bronco

16   was determined not to be from the F-150."  (Lodgment 3 Vol. 5 at 618.)  The stipulation was accepted

17   by counsel for Petitioner.  (*Id.*)  At retrial, Michael Williams, the owner and driver of the Ford F-150,

18   testified that while he was stopped in the far right hand lane at the intersection of Camino Ruiz and

19   Mira Mesa Blvd, the Bronco approached from behind, got up on the curb beside his truck, and then

20   sideswiped the truck, tearing the passenger's side mirror off, causing it to hang by a wire.  (Lodgment

21   6 Vol. 3 at 388-92.)  Tyrell Folker, a passenger in the Ford F-150, also testified that while seated in

22   the vehicle at red light at the intersection of Camino Ruiz and Mira Mesa Blvd, a green and tan Bronco

23   "slammed right into the side of us and took out the side view mirror."  (Lodgment 6 Vol. 2 at 379-81.)

24   Folker testified that after being hit by the Bronco, the side mirror was dangling by a cable.  (*Id.* at

25   381.)

26   After reviewing the stipulation from the first trial and the witness testimony regarding the

27   Bronco's contact with the Ford F-150, the Court finds Petitioner has not established the witnesses'

28   testimony regarding the collision was false or perjurious.  The paint analysis showing that no paint

was transferred between the two vehicles does not make Williams's and Folker's testimony that the Bronco collided with the Ford F-150 and knocked the side view mirror off to the point it dangled by a cable or wire false. The paint analysis did not establish that the Bronco did not make any contact with the Ford F-150. Accordingly, the Court finds the prosecutor did not knowingly offer false testimony that the Bronco side-swiped the Ford F-150. *See Jackson,* 513 F.3d at 1071.

Because the Court finds the State did not knowingly use perjured testimony, Petitioner's due process rights were not violated. Accordingly, Ground Four should be **DENIED**.

### 5. Ground Five

In Ground Five, Petitioner argues he was deprived of discovery concerning police practices during vehicular pursuits and the reasonableness of the officer's actions in pursuing Petitioner in violation of the Sixth, Eighth, and Fourteenth Amendments and in violation of his due process rights. (Doc. No. 4 at 12.) Respondents contend the trial court properly denied these discovery requests, because the information is irrelevant to determine whether Petitioner knew his own actions might result in an accident. (Doc. No. 54 at 19.) The California Supreme Court was silent as to the merits of this ground in its denial of the state habeas petition, therefore this Court will look through to the decision of the California Court of Appeal on direct appeal. *See Ylst,* 501 U.S. at 804. This Court gives deference to the state court's finding and reviews whether the decision was contrary to or involved an unreasonable application of federal law. *See Williams,* 529 U.S. at 403.

On direct appeal following his first trial, Petitioner challenged the trial court's denial of his motion for discovery and the right to introduce evidence relating to the officer's conduct as a proximate result of the motorist's death. (Lodgment 7 at 2.) Prior to trial, the trial court denied Petitioner's motion to compel discovery of the San Diego Police Department's policies concerning vehicular pursuits and a *Pitchess v. Superior Court*, 11 Cal.3d 531, 535 (1974), motion seeking review of documents reflecting disciplinary proceedings made against Officer Burow arising from the

fatal accident.  (*Id.* at 15.)  The trial court also refused, on relevance grounds, to allow Petitioner to ask Officer Burow about police department practices and policies and whether he was trained on those matters and disciplined as a result of the accident.  (*Id.* at 15.)  The trial court also sustained an objection when Petitioner's counsel asked Officer Glazewski whether Officer Burow slowed before entering the intersection where the accident took place.  (*Id.* at 15.)

The court of appeal, applying an abuse of discretion standard, held regarding Petitioner's motion and questions regarding police department policies and practices:

> Insofar as the court denied discovery of the materials or admission of evidence as irrelevant to implied malice, we find no abuse of discretion. In the absence of any evidence that at the time of the high-speed chase the defendants were aware of the Department's policies and practices regarding vehicular pursuits, evidence of those policies and practices has no bearing on whether they acted deliberately, with conscious disregard for human life.
> Similarly, we find that the court did not err in precluding evidence at trial of police department practices and policies and whether Officer Burow was given training on those practices and policies, over Lima's argument that the evidence was necessary for impeachment purposes. Because there was no evidence at trial regarding such matters, the excluded evidence would not have impeached anything.
> The trial court reasonably concluded that the proposed evidence was not relevant and that the discovery was neither relevant nor likely to reveal information bearing on implied malice. It did not err in doing so.

(Lodgment 7 at 16-17.)

The court of appeal also found the trial court did not abuse its discretion in denying Petitioner's *Pitchess* motion for disciplinary findings against Officer Burow or in sustaining objections to questions posed to Officer Glazewski about whether Officer Burow slowed down, reasoning that:

> In a case such as this one, the question of foreseeability does not focus on whether the harm was reasonably foreseeable as a result of the officer's conduct, but instead on whether the harm was reasonably foreseeable to the defendant as a consequence of his own conduct. (*People v. Schmies*, *supra*, 44 Cal.App.4th at pp. 51-52, 51.) "Since the officers' conduct was a direct and specific response to [the] defendant's conduct, the claim that their conduct was a superseding cause of the accident can be supported only through a showing that their conduct was so unusual, abnormal, or extraordinary that it could not have been foreseen." (*Id.* at p. 52, 51.)

Applying these principles, whether Officer Burow was subject to discipline by the Department as a result of his involvement in the fatal accident has very little, if any, bearing on whether it was reasonably foreseeable to Lima that his evasion of the police would result in a fatal accident. Similarly, whether Officer Burow slowed down before entering the intersection, although relevant to the reasonableness of his conduct from his perspective, was not relevant to the issue at trial, which was whether it was foreseeable to Lima that an accident might occur as a result of his acts in fleeing from the police.

(Lodgment 7 at 17-18.)

At retrial, Petitioner again made a *Pitchess* motion seeking review of documents reflecting disciplinary proceedings made against Officer Burow arising from the fatal accident and attempted to cross-examine Officer Burow as to his training and the reasonableness of his actions in pursuing Petitioner during the high speed chase. The trial court denied Petitioner's *Pitchess* motion to the extent it sought review of documents going to the issue of causation because the court of appeal had dealt with the issue following the first trial. (Lodgment 6 Vol. 1 at 20.) In disallowing questions to Office Burow about his training and reasonableness in his actions as irrelevant, the trial court explained:

[T]hat's part of the problem that in this whole area where pursuit is involved and there is a provocative act murder prosecution, because the inquiry, I'll repeat it, is whether it's reasonably foreseeable, not whether [the officer's] conduct is reasonable. . . . What I indicated by my ruling is I'm going to let you go into what transpired when he got to the house, the issue about the Bronco, the police car, where it was, what he did, and then the drive from place to place, but not whether or not what he did comports with any training he received or whether or not he did something negligently and outside the policy and procedure of the San Diego Police Department.

(Lodgment 6 Vol. 2 at 263-64.)

On direct appeal following retrial, Petitioner again challenged the trial court's denial of his *Pitchess* motion and the trial court's ruling disallowing cross-examination of Officer Burow as to the reasonableness of his actions in pursuing Petitioner. (Doc. No. 6-9 at 9-11.) The court of appeal rejected Petitioner's challenges to the denial of his *Pitchess* motion and the prevention of his cross-examination of Officer Burow, finding that the law of the case doctrine applied and the court of appeal

had already decided in Petitioner's first direct appeal that such evidence was irrelevant to any elements of the charged offense.  (*Id.*)  The court of appeal held that application of the law of the case doctrine did not result in an unjust decision because "there is nothing 'unjust' about the court's limitation of cross-examination into an area that was irrelevant to the issues to be decided."  (*Id.* at 10-11.)

Under California's *Pitchess* procedure, a criminal defendant has a limited right to discovery of peace officer personnel records, specifically of complaints made against the officer. *Pitchess*, 11 Cal.3d 531 (1974); Cal.Penal Code § 832.7, 832.8; Cal. Evid.Code § § 1043-1045. The *Pitchess* procedure follows two steps. First, the defendant must make a written motion for peace officer personnel records that describes the records sought and that is supported by "affidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that such governmental agency identified has the records or information from the records." *California Highway Scavone-Nancerol v. Superior Court*, 84 Cal.App.4th 1010, 1019-20 (Cal.Ct.App.2000); Cal. Evid.Code § 1043. Second, if a showing of good cause is made, the trial court will conduct an in camera review of the records to determine whether they are relevant to the current proceedings. *Id.* § § 1043 & 1045.

"[T]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *see also United States v. Fort*, 478 F.3d 1099, 1102 (9th Cir. 2007) (same). The Due Process Clause "has little to say regarding the amount of discovery which the parties must be afforded[.]" *Wardius v. Oregon*, 412 U.S. 470, 474 (1973). However, in *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87.  In order to be considered material, the disclosure of the evidence must have

a reasonable probability of changing the outcome of the case. *United States v. Bagley*, 473 U.S. 667, 682 (1985). The Ninth Circuit has found that the *Pitchess* preliminary requirement of good cause complies with Supreme Court precedent under *Brady* (as modified in *Pennsylvania v. Ritchie*, 480 U.S. 39, 58 n. 15 (1987)) and has held that California's procedure is not contrary to Supreme Court precedent. *Harrison v. Lockyer*, 316 F.3d 1063, 1066 (9th Cir. 2003) (holding that the denial of *Pitchess* discovery does not violate due process if the defendant makes "no showing that [a police personnel] file contained complaints material to his defense").

The Court finds that Petitioner's claim that he was denied discovery in violation of the Sixth, Eighth, and Fourteenth Amendments and his due process rights is without merit. The only federal question presented by Petitioner is whether he was denied access to favorable and material evidence under *Brady*. Petitioner has made no such showing. The trial court and the court of appeal determined that the evidence Petitioner sought in his motions for discovery of police practices and policies and in his *Pitchess* motions for records of disciplinary action against Officer Burow as a result of the accident were irrelevant to the case, as they had no bearing on whether Petitioner acted deliberately, with conscious disregard for human life nor on whether it was foreseeable to Lima that an accident might occur as a result of his acts in fleeing from the police. The court of appeal also determined the evidence on practices and policies and Officer Burow's training was not relevant for impeachment purposes "[b]ecause there was no evidence at trial regarding such matters, the excluded evidence would not have impeached anything." (Lodgment 7 at 16-17.) There is not a reasonable probability that allowing the discovery of this evidence would have changed the outcome of the case, as it was irrelevant to the issue of implied malice and was irrelevant for impeachment purposes. Because the trial court did not deny Petitioner access to evidence material to guilt or punishment, the court of

/ / /

appeal's decision upholding the trial court's rulings precluding the discovery was not contrary to or an unreasonable application of federal law. Accordingly, Ground Five should be **DENIED**.

### 6. Grounds Six, Seven, Eight, and Twelve

In Grounds Six, Seven, Eight, and Twelve, Petitioner raises issues regarding the sufficiency of jury instructions, and as such this Court will address these issues together. This Court will review these grounds *de novo*, as the state court did not reach the merits and therefore there is no state court decision to which to accord deference. *See Pirtle*, 313 F.3d at 1167.

### a. Ground Six

In Ground Six, Petitioner asserts a jury instruction for "robbery–when still in progress," CALJIC No. 8.21.1, was given in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments. (Doc. No. 4 at 14.) Petitioner argues the jury instruction was given in violation of the Federal Double Jeopardy Clause, fundamental principles of fairness, and collateral estoppel. (Doc. No. 4 at 14.) On retrial, the jury was presented with a jury instruction of "robbery–when still in progress," but not given a verdict form for such a charge, which according to Petitioner, tainted and confused the jury. (*Id.*; *see* Lodgment 4 Vol. 2 at 308.) Petitioner argues that a "robbery–when still in progress" jury instruction is designed for use in connection with a charge of felony-murder based on robbery and that the court of appeal reversed his murder conviction based on the felony-murder doctrine. (Doc. No. 4 at 14.) Respondents argue that Petitioner was not prejudiced in any way for the jury not having a verdict form for a crime for which he was already convicted and that the duration of the robbery was relevant in fixing the degree of murder proximately caused. (Doc. No. 54 at 13.)

Claims of error in state jury instructions are generally a matter of state law and do not invoke a Constitutional question unless they amount to a deprivation of due process. *Hayes v. Woodford*, 301 F.3d 1054, 1086 (9th Cir. 2002). A violation of due process occurs if a trial is fundamentally unfair.

*Estelle*, 502 U.S. at 72–73.  In challenging a jury instruction, the petitioner must show both that the instruction was ambiguous and that there was "a reasonable likelihood" that the jury applied the instruction in a way that relieved the state of its burden of proving every element of the crime beyond a reasonable doubt. *Waddington v. Sarausad*, 555 U.S. 179, 190-91 (2009) (citing *Estelle*, 502 U.S. at 72).  A "reasonable likelihood" is lower than the "more likely than not" standard but higher than a mere "possibility." *Polk v. Sandoval*, 503 F.3d 903, 910 (9th Cir. 2007).  "In making this determination, the jury instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Waddington*, 555 U.S. at 191 (quotations and citations omitted). "The pertinent question is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Id.* (quoting *Estelle*, 502 U.S. at 72).

A determination that there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution establishes only that an error has occurred. *See Calderon v. Coleman*, 525 U.S. 141, 146 (1998).  If an error is found, the court also must determine that the error had a substantial and injurious effect or influence in determining the jury's verdict, *see Brecht*, 507 U.S. at 637, before granting relief in habeas proceedings. *See Calderon*, 525 U.S. at 146-47.

After reviewing the "robbery–when still in progress" jury instruction in light of the instructions as a whole and the complete trial record, the Court does not find a reasonable likelihood that the jury applied the instruction in a way that violates the Constitution.  The jury was not provided instructions regarding robbery and the duration of such in order to convict Petitioner of robbery, but to determine whether the provocative act occurred during the commission of the crime of robbery when the perpetrators of the robbery had the specific intent to commit the robbery.  (*See* Lodgment

4 Vol. 2 at 290, 295-96.)  The jury was instructed as such.  (Lodgment 6 Vol. 5 at 943-46; *see* Lodgment 4 Vol. 2 at 290, 295-96.)  These findings were necessary for the jury to decide the question of whether Petitioner was guilty of provocative act first degree murder.  (*Id.*)  Petitioner's retrial was not made fundamentally unfair by giving a necessary instruction.  Accordingly, the Court does not find the "robbery–when still in progress" jury instruction violated Petitioner's due process rights.

Petitioner's claim that the "robbery–when still in progress" jury instruction without an accompanying verdict form somehow violated the prohibition against double jeopardy is also without merit.  Double jeopardy protects against the imposition of multiple criminal punishments for the same offense. *Hudson v. United States*, 522 U.S. 93, 99 (1997).  Double jeopardy prohibits retrial following a reversal of conviction for insufficient evidence.  *Burks v. United States*, 437 U.S. 1, 17 (2005).  However, a reversal of a criminal conviction can be followed by a retrial, without the implication of double jeopardy, if the reversal rested on procedural or substantive defects in the first trial.  *Montana v. Hall,* 481 U.S. 400, 404 (1987).  On appeal, Petitioner's murder charge was reversed, while the robbery convictions were upheld.  (Lodgment No. 7 at 2, 23.)  The reversal was based upon the court's finding that it could not discern whether the jury based its verdict on the provocative act theory or the felony-murder theory.  (*Id.* at 21.)  Because this reversal is not based upon insufficient evidence, double jeopardy does not bar the retrial on the first degree murder charge.  Petitioner was not retried on a charge of robbery, and was not convicted of robbery twice.

The Double Jeopardy Clause incorporates the doctrine of collateral estoppel. *See Ashe*, 397 U.S. at 443–44; *see also Schiro v. Farley*, 510 U.S. 222, 232 (1994). Collateral estoppel means "that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe*, 397 U.S. at 443; *see also Dowling v. United States*, 493 U.S. 342, 348 (1990); *Charles v. Hickman*, 554 F.3d 816, 830 (9th

Cir. 2009).  A court's consideration of a claim involving collateral estoppel requires a three-step analysis: (1) an identification of "the issues in the two actions to determine whether they are sufficiently material and similar to justify invoking the doctrine;" (2) an examination of "the record in the prior case to determine whether the similar issue was litigated;" and (3) an examination of "the record of the prior proceeding to determine whether the issue was necessarily decided in the first case." *Wilson v. Belleque*, 554 F.3d 816, 830 (9th Cir. 2009). The defendant bears the burden of demonstrating "that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *Dowling*, 493 U.S. at 350.

In Ground Six, Petitioner claims the jury instruction for "robbery–when still in progress" violates collateral estoppel rules.  The Court disagrees.  The jury instruction for "robbery–when still in progress" was given in connection with the charge of provocative act murder, as the jury was instructed that to convict Petitioner, they had to find he committed an intentional provocative act during the commission of the robbery.  (Lodgment 6 Vol. 5 at 946.)  During the first trial, the jury was given the same "robbery–when still in progress" instruction that read in part, "[f]or the purposes of determining whether an unlawful killing has occurred during the commission or attempted commission of a robbery, the commission of the crime of robbery is not confined to a fixed place or a limited period of time."  (Lodgment 1 Vol. 1 at 228.)  The instruction was given in both trials in relation to the charge of murder against Petitioner and was an ultimate fact going to that charge only. Because the murder conviction was reversed on appeal and remanded for retrial, there was no final judgment on that issue following the first trial.  Therefore, the second trial court did not relitigate a previously determined issue.  Instead, the trial court gave the "robbery–when still in progress" instruction to the jury to accompany the provocative act murder instructions.

/ / /

Petitioner also argues that the "robbery–when still in progress" instruction was designed for use in connection with a charge of felony-murder based on robbery and that the court of appeal reversed his murder conviction based on its finding that the felony-murder doctrine was inapplicable. (Doc. No. 4 at 14.)  While the use note for CALJIC No. 8.21.1 "robbery–when still in progress" notes that the instruction is designed for use in connection with a charge of felony-murder based on robbery, the jury instruction for provocative act murder, CALJIC No. 8.12 "Murder–Killer other than Perpetrator of Underlying Crime," requires that the intentional provocative act is committed "during the commission of the crime."  CALJIC No. 8.12; (Lodgment 4 Vol. 2 at 295-96.)  "Robbery–when still in progress" supplies an instruction for the jury to determine if the provocative act was committed "during the commission" of the robbery.  The court of appeal in reversing the murder conviction, found the trial court improperly gave the jury an instruction for felony-murder, CALJIC No. 8.21. (Lodgment 7 at 9-14.)  The court of appeal did not find the "robbery–when still in progress" instruction inapplicable. (*See id.*)  Petitioner's challenge to the use of "robbery–when still in progress" based upon the use notes for the jury instruction is challenging the use of the instruction solely as an error under state law, which does not state a claim cognizable in federal habeas proceedings. *Estelle*, 502 U.S. at 71-72.  To the extent Petitioner is making a due process, double jeopardy, or collateral estoppel argument with this assertion, the Court finds no Constitutional violation as discussed above.

Accordingly, for the aforementioned reasons, Ground Six should be **DENIED**.

### b. Ground Seven

In Ground Seven, Petitioner argues a jury instruction for "flight from pursuing peace officer–reckless driving," CALJIC No. 12.85, was given in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments.  (Doc. No. 4 at 15.)  As in Ground Six, Petitioner again argues the jury instruction was given in violation of the Federal Double Jeopardy Clause, fundamental principles of

fairness, and collateral estoppel.  (*Id.*)  In support of this ground, Petitioner notes that the jury in the first trial convicted him of the felony of evading a pursuing police officer and causing a death under Cal. Veh. Code §2800.3, but did not reach a verdict on the lesser-included offenses of the felony of evading a pursuing police officer (without an injury or death) under Cal. Veh. Code §2800.2 or the misdemeanor of evading a pursuing police officer under Cal. Veh. Code §2800.1.  (*Id.* (citing Lodgment 1 Vol. 2 at 251-53); *see also* Lodgment 1 Vol. 2 at 250, 443.)  Petitioner argues that the jury in the second trial was presented with the same instruction rejected by the jury at the first trial.  (Doc. No. 4 at 15.)  Petitioner also points to the court of appeal's decision reversing his murder conviction, arguing the court of appeal found "inherently dangerous" irrelevant except in support of a second-degree felony-murder charge.  (*Id.*)  Respondents argue Petitioner's double jeopardy rights were not violated because there was no acquittal at the first trial on the lesser-included offense of evading a police officer (without an injury or death) and Petitioner suffered no prejudice by requiring the second jury to duplicate the findings of the first jury.  (Doc. No. 54 at 14.)

Petitioner asserts that the instruction for "flight from pursuing peace officer–reckless driving," CALJIC No. 12.85, violated fundamental principles of fairness.  As noted above in the discussion of Ground Six, claims of error in state jury instructions are generally a matter of state law and do not invoke a Constitutional question unless they amount to a deprivation of due process. *Hayes*, 301 F.3d at 1086.  A violation of due process occurs if a trial is fundamentally unfair. *Estelle*, 502 U.S. at 72–73.

After reviewing the "flight from pursuing peace officer–reckless driving" jury instruction in light of the instructions as a whole and the complete trial record, the Court does not find a reasonable likelihood that the jury applied the instruction in a way that violates the Constitution. *Waddington*, 555 U.S. at 190-91.  In the first trial, a "flight from pursuing peace officer–reckless

driving" instruction was given as an instruction on a lesser crime to that of felony evading peace officer with injury/death and felony evading peace officer. (Lodgment 1 Vol. 2 at 251-53.) The jury was instructed in the first trial that "[i]f you are not satisfied beyond a reasonable doubt that the defendant is guilty of the crime charged in Count 7, namely Felony Evading Peace Officer with Injury/Death, you may nevertheless convict him of any lesser crime, if you are convinced beyond a reasonable doubt that the defendant is guilty of the lesser crime." (*Id.* at 251.) This instruction was followed by the elements of felony evading peace officer and misdemeanor evading peace officer, or "flight from pursuing peace officer–reckless driving." (*Id.*) The second trial court gave the same jury instruction not to convict Petitioner of the lesser-included offense of "flight from pursuing peace officer–reckless driving," but to supply an instruction on the alleged provocative act committed by Petitioner. (*See* Lodgment 4 Vol. 2 at 304-05.) In order for the jury to convict Petitioner of provocative act murder, the jury had to find Petitioner committed an intentional provocative act, which in this case was alleged to be eluding a pursuing peace officer. (*Id.* at 295-96, 304-05.) The "flight from pursuing peace officer–reckless driving" instruction was necessary to define the provocative act that allegedly caused a peace office in response to the provocative act to kill another person. The jury in his second trial was not asked to find for a verdict on the offense of evading a police officer. (*See* Lodgment 4 Vol. 2 at 333.) Petitioner's retrial was not made fundamentally unfair by giving a necessary instruction.

The Court also finds Petitioner's reliance on language from the court of appeal's decision reversing his murder conviction unavailing in analyzing whether his due process rights were violated by the giving of the "flight from pursuing peace officer–reckless driving" instruction. (Doc. No. 4 at 15.) In the first trial, the jury was given an instruction defining murder, which stated in part, "[e]vading a peace officer while driving recklessly i[s] a felony inherently dangerous to human life."

(Lodgment 1 Vol. 1 at 218.)  In discussing this instruction, the court of appeal held the fact "that reckless evasion is an inherently dangerous felony is irrelevant except as support for a second degree felony-murder theory." (Lodgment 7 at 12.)  Because this instruction was given along with express instructions on a first degree felony-murder theory, the court of appeal found the jury may have reasonably concluded that the felony-murder doctrine was applicable independent of the provocative act principles.  (*Id.*)  The court of appeal's decision did not find that the jury should not have been instructed on reckless evasion or that reckless evasion is irrelevant to a provocative act theory.  Rather, the court of appeal took issue with the trial court's instruction stating that reckless evasion is an inherently dangerous felony.  The jury on retrial was not given the instruction that reckless evasion is an inherently dangerous felony.  Therefore, the second trial court did not err in providing the jury with the instruction on "flight from pursuing peace officer–reckless driving" to define the alleged provocative act committed by Petitioner.  Accordingly, the Court does not find the "flight from pursuing peace officer–reckless driving" jury instruction violated Petitioner's due process rights.

Petitioner's claim that the "flight from pursuing peace officer–reckless driving" jury instruction somehow violated the prohibition against double jeopardy because he was convicted of the greater offense of felony of evading a pursuing police officer and causing a death in the first trial is also without merit. Double jeopardy protects against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *See North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), overruled on other grounds by *Alabama v. Smith*, 490 U.S. 794 (1989).  A guilty verdict on a greater offense is not an acquittal on the lesser offense. *Carter v. U.S.*, 530 U.S. 225, 259 (2000).

At his first trial, Petitioner was found guilty of the greater offense of felony evading a pursuing police officer and causing a death. (Lodgment 1 Vol. 2 at 443.)  This guilty verdict did not

serve as an acquittal on the lesser offense of misdemeanor evading peace officer, or "flight from pursuing peace officer–reckless driving," as the jury did not return a verdict on the lesser offense. On retrial, Petitioner was not charged or prosecuted for misdemeanor evading peace officer, or "flight from pursuing peace officer–reckless driving." (*See* Lodgment 4 Vol. 2 at 261-327.) Rather, as discussed above, the jury instruction on misdemeanor evading peace officer was given in relation to the charge of provocative act murder to provide the elements for the alleged provocative act. Because Petitioner was not prosecuted for misdemeanor evading peace officer following an acquittal, prosecuted for misdemeanor evading peace officer following a conviction, or punished for the same offense twice, the jury instruction did not violate Petitioner's double jeopardy rights.

Petitioner also argues that the "flight from pursuing peace officer–reckless driving" jury instruction violates collateral estoppel rules. (Doc. No. 4 at 15.) As discussed above in relation to Ground Six, the Double Jeopardy Clause incorporates the doctrine of collateral estoppel. *See Ashe*, 397 U.S. at 443–44; *see also Schiro*, 510 U.S. at 232. In *Ashe*, "the Supreme Court 'held that the Double Jeopardy Clause precludes the Government from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial.'" *Sivak v. Hardison*, 658 F.3d 898, 918 (9th Cir. 2011) (quoting *Yeager v. United States*, 557 U.S. 110, 129 S.Ct. 2360, 2366 (2009)); *see also U.S. v. Dixon*, 509 U.S. 688, 705 (1993) ("The collateral-estoppel effect attributed to the Double Jeopardy Clause, [citation omitted], may bar a later prosecution for a separate offense where the Government has *lost* an earlier prosecution involving the same facts.") (emphasis in original). Because Petitioner was not acquitted in the first trial of a charge of misdemeanor evading peace officer and therefore the issue was not necessarily decided by a jury's acquittal, providing the jury with the instruction in relation to the prosecution's provocative act theory of murder did not violate collateral estoppel rules.

Accordingly, for the aforementioned reasons, Ground Seven should be **DENIED**.

**c. Ground Eight**

In Ground Eight, Petitioner argues a special jury instruction regarding negligence on the part of an officer was given in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments. (Doc. No. 4 at 16, citing Lodgment 4 Vol. 2 at 302.)  As in Ground Six and Seven, Petitioner again argues the jury instruction was given in violation of the Federal Double Jeopardy Clause, fundamental principles of fairness, and collateral estoppel. (*Id.*)  Petitioner asserts that the instruction erroneously suggested to the jury that they could not consider the effect of the officer's behavior and that the court of appeal reversed this instruction following the first trial.  (*Id.*, citing Lodgment No. 1 Vol. 1 at 226 & Lodgment 7 at 18.)   Respondents argue the two instructions differ, as the instruction given in Petitioner's first trial did not explain that negligence by the pursing officer could have been the superseding cause of death.  (Doc. No. 54 at 21.)

Special instruction No. 2 given at the first trial states:

> Any negligence or other fault of the officers is not a defense to the charge against the defendants.  The fact that the officers may have shared responsibility or fault for the accident does nothing to exonerate the defendant for his role.  Whether the officers' conduct could be described with such labels as negligence, careless, tortious, cause for discipline, or even criminal, in an action against them, is not at issue with respect to the defendants here.

(Lodgment No. 1 Vol. 1 at 226.)

On appeal, Petitioner argued the special instruction erroneously suggested to the jury that it should not consider the effect of the officers' behavior in determining causation.  (Lodgment 7 at 18.)  The California Court of Appeal agreed with Petitioner and held that the language had the precise effect Petitioner complained of and thus was given in error.  (*Id.*)  The court of appeal explained its decision as follows:

> The jury was appropriately instructed that "[a] cause of death is an act that sets in motion a chain of events that produces death as a direct, natural and probable consequence of the act and without which the death would not occur" (CALJIC No.

3.40; *People v. Hansen*, *supra*, 59 Cal.App.4th at p. 479), and that if the conduct of two or more persons contributes to the death, the conduct of each such person is a cause of death if it was a substantial factor contributing to the result. (CALJIC No. 3.41.) Although negligence on the part of the victim or a third party responding to the defendant's unlawful act is generally not a defense to the defendant's criminal liability (*People v. Roberts*, *supra*, 2 Cal.4th at p. 312, 6 Cal.Rptr.2d 276; *People v. Harris* (1975) 52 Cal.App.3d 419, 426), such negligence will constitute a superseding cause of the death, and thus relieve a defendant of criminal liability, if it was so extraordinary as to be unforeseeable. (*People v. Roberts*, *supra*, 2 Cal.4th at pp. 321-322.)

   Here, the jury was not specifically instructed regarding the effect of unforeseeable third party conduct on the defendants' liability for Meng's death (compare *People v. Schmies*, *supra*, 44 Cal.App.4th at p. 50, fn. 7), and the italicized language of the prosecution's special instruction essentially informed the jury that the officers' conduct was irrelevant in determining causation-a point the prosecutor reiterated in closing argument. The instruction did not comport with the law and the court thus erred in giving it. (*People v. Roberts*, *supra*, 2 Cal.4th at pp. 321-322.) However, because we are reversing the murder convictions on other grounds, we need not determine whether the error requires reversal.

(*Id.* at 19.)

   Following the court of appeal's decision on this special instruction, the jury was instructed as follows at Petitioner's retrial:

   It is not a defense to a criminal charge that the deceased or some other person was guilty of negligence, which was a contributory cause of the involved death.
   The fact that the officers may have shared responsibility or fault for the accident does nothing to exonerate the defendant for his role.  Whether the officers' conduct could be described with such labels as negligence, careless, tortious, cause for discipline, or even criminal, in an action against them, is not at issue with respect to the defendants here.
   However, although negligence on the part of an officer responding to a defendant's unlawful act is generally not a defense to a defendant's criminal liability, such negligence will constitute a superseding cause of the death, and thus relieve a defendant of criminal liability, if it was so extraordinary as to be unforeseeable.

(Lodgment 4 Vol. 2 at 302.)  This instruction removed the language, "any negligence or other fault of the officers is not a defense to the charge against the defendants" and added a provision regarding how negligence of an officer may constitute a superseding cause of death and therefore relieve the defendant of criminal liability, if the negligence was so extraordinary to be unforeseeable.

Petitioner asserts that the special instruction given at retrial violated fundamental principles of fairness. As noted above in the discussion of Ground Six and Seven, claims of error in state jury instructions are generally a matter of state law and do not invoke a Constitutional question unless they amount to a deprivation of due process. *Hayes*, 301 F.3d at 1086.  A violation of due process occurs if a trial is fundamentally unfair. *Estelle*, 502 U.S. at 72–73.

After reviewing the special jury instruction in light of the instructions as a whole and the complete trial record, the Court does not find a reasonable likelihood that the jury applied the instruction in a way that violates the Constitution. *Waddington*, 555 U.S. at 190-91.  The second trial court corrected the erroneous elements of the instruction given at Petitioner's first trial.   The instruction at retrial removed the language instructing the jury that "any negligence" is not a defense and added language from the court of appeal's discussion of this instruction informing the jury that if an officer's negligence is so extraordinary to be unforeseeable, it may constitute a superseding cause of death and relieve the defendant of criminal liability.  The jury at retrial was also instructed as to "more than one cause/concurrent cause," which added language to the instruction from the first trial explaining that, "an intervening act may be so disconnected and unforeseeable as to be a superceding cause that, in such a case, the defendant's act will be regarded at law as not being a cause of the injury sustained." (Compare Lodgment 1 Vol. 1 at 225, with Lodgment 4 Vol. 2 at 301.)  The jury at the first trial was not instructed that an intervening act may be a superceding cause relieving a defendant of criminal liability.  The Court finds the corrected special instruction given at retrial did not make Petitioner's retrial fundamentally unfair.  Accordingly, the Court finds Petitioner's due process rights were not violated by the giving of the special instruction.

Petitioner asserts the special jury instruction also violated the double-jeopardy clause and collateral estoppel principles.  (Doc. No. 4 at 16.)  The Court disagrees.  As discussed above, double

jeopardy protects against the imposition of multiple criminal punishments for the same offense. *Hudson*, 522 U.S. at 99. Double jeopardy prohibits retrial following a reversal of conviction for insufficient evidence. *Burks*, 437 U.S. at 17. However, a reversal of a criminal conviction can be followed by a retrial, without the implication of double jeopardy, if the reversal rested on procedural or substantive defects in the first trial. *Hall,* 481 U.S. at 404. On appeal, Petitioner's murder charge was reversed based upon the court's finding that it could not discern whether the jury based its verdict on the provocative act theory or the felony-murder theory. (Lodgment No. 7 at 2, 21, & 23.) Because this reversal is not based upon insufficient evidence, double jeopardy does not bar the retrial on the first degree murder charge. The challenged instruction relates to the first degree murder charge. Accordingly, the Court finds Petitioner's double jeopardy rights were not violated.

Similarly, the Court finds the special instruction did not violate collateral estoppel principles. As discussed above in relation to Ground Six, the Double Jeopardy Clause incorporates the doctrine of collateral estoppel. *See Ashe*, 397 U.S. at 443–44; *see also Schiro*, 510 U.S. at 232. After reviewing the records from both trials, the special jury instruction Petitioner challenges in his current federal habeas petition is a different instruction than the one held erroneous by the California Court of Appeal. *See Wilson*, 554 F.3d at 830. The challenged special jury instruction given at retrial specifically changed the erroneous language noted by the court of appeal following Petitioner's first trial. The court of appeal did not hold that a special instruction regarding the conduct of the officer could never be given, just that as it was given it was erroneous for failing to instruct on superceding causation. The second trial court complied with the court of appeal's findings by altering the instruction's language to reflect the law on causation. Because the second trial court followed the court of appeal's decision regarding the special instruction, the Court finds no violation of collateral estoppel principles. The issues being litigating are different and the challenged jury instruction given at retrial was not held

to be erroneous by the court of appeal following the first trial.  Had the second trial court given the exact same instruction the court of appeal found erroneous, Petitioner's claim may be on firmer footing.

Accordingly, for the aforementioned reasons, Ground Eight should be **DENIED**.

**d. Ground Twelve**

In Ground Twelve, Petitioner asserts the jury instruction for "homicide" given at his retrial violated the Fifth, Sixth, Eighth, and Fourteenth Amendments.  (Doc. No. 4 at 20.)  In support of this claim, Petitioner argues the jury instruction regarding "homicide" did not include manslaughter as manslaughter was blacked out, therefore suggesting to the jurors that the only available verdict would be first degree murder.  (*Id.*, citing Lodgment 4 Vol. 2 at 292 & 298.)  Respondents argue that because the police pursuit and death occurred during Petitioner's flight from a robbery, malice was presumed under California law.  (Doc. No. 54 at 15, citing Cal. Penal Code §189[14].)  Therefore, there was no evidence that Petitioner acted without malice such that the death was at most manslaughter and no evidence to support a jury instruction on a lesser homicide offense.  (*Id.*)

At retrial, in going over the proposed and agreed upon jury instructions, counsel for Petitioner stated to the court, "because of the nature of this case, and because of the law, on behalf of Mr. Lima we think that it would be unwise and legally incorrect for us to request or demand a second degree instruction."  (Lodgment 6 Vol. 5 at 854.)  In explaining the reasoning behind this decision, counsel explained, "the instruction and the law relative to second degree, which requires a killing, does not apply in this case.  And for us to request an instruction which by implication says our client killed, would be a mistake, a serious mistake.  We elect not to request or demand that

---

[14]Cal. Penal Code §189 provides, "All murder . . . which is committed in the perpetration of, or attempt to perpetrate, arson, rape, carjacking, robbery, burglary, mayhem, kidnapping, train wrecking, or any act punishable under Section 206, 286, 288, 288a, or 289, or any murder which is perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict death, is murder of the first degree."

instruction." (*Id.*)  The  trial court, in discussing the jury instructions with counsel, stated that the verdict form should "say that it's fixed at first degree murder if they're found guilty," to which Petitioner's counsel replied, "[t]hat's correct." (*Id.* at 855.)  Petitioner's counsel did not request an instruction for manslaughter, nor was it a theory of the defense.  (*See* Lodgment 6 Vols. 1-5.)

The Court finds Petitioner's claim regarding the failure to instruct on manslaughter fails. The failure of a state court to instruct on a lesser-included offense in a non-capital case, such as this one, fails to present a federal constitutional question. *Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000) (quoting *Bashor v. Risley*, 730 F.2d 1228, 1240 (9th Cir. 1984)); *see also Windham v. Merkle*, 163 F.3d 1092, 1106 (9th Cir. 1998) (failure of state trial court to instruct on lesser-included offenses in non-capital case does not present federal constitutional question), cert. denied, 541 U.S. 950 (2004); *Huynh v. Hernandez*, 2007 WL 186307 (9th Cir. 2007) (as there is no clearly established Supreme Court law that requires giving a lesser-included offense instruction on involuntary manslaughter in a non-capital case, court foreclosed from granting habeas relief on state petitioner's claim that trial court's failure to instruct the jury*, sua sponte*, on involuntary manslaughter deprived him of due process).[15]  Accordingly, Petitioner's claim that the trial court erred in failing to give lesser-included offense instructions on manslaughter is not cognizable on federal habeas review and should be denied on that basis.

Petitioner has also failed to demonstrate that he was constitutionally entitled to an instruction on manslaughter as part of a theory of the defense.  Claims of error in state jury instructions are generally a matter of state law and do not invoke a Constitutional question unless they amount to a deprivation of due process. *Hayes*, 301 F.3d at 1086.  A violation of due process occurs if a trial is fundamentally unfair. *Estelle*, 502 U.S. at 72–73.  A state court's jury instructions violate due process

---

[15]The court may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007. *See* U.S.Ct.App. 9th Cir. Rule 36–3(b); Fed. R.App. P. 32.1(a).

if they deny the criminal defendant "a meaningful opportunity to present a complete defense." *Clark v. Brown*, 450 F.3d 898, 904 (9th Cir. 2006) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)).  Petitioner's defense team did not ask the trial court to give a manslaughter instruction and the primary theory of Petitioner's defense was that the officer's conduct was a superceding cause of the victim's death.   Additionally, Petitioner has pointed to no evidence supporting the giving of a manslaughter instruction and therefore has not demonstrated any prejudice even assuming an error. *See Brecht*, 507 U.S. at 637.  On appeal following his retrial, the California Court of Appeal found Petitioner's conduct satisfied the implied malice necessary for the elements of provocative act murder. (Doc. No. 6-9 at 14.)  This court accords deference to the state court's finding.[16]  *See Pirtle*, 313 F.3d at 1167. The Court finds the failure to give a manslaughter instruction when one was not requested, the instruction did not support the theory of defense, and there was no evidence supporting the instruction did not make Petitioner's retrial fundamentally unfair or deny Petitioner a meaningful opportunity to present a complete defense.   Accordingly, the lack of a manslaughter instruction did not violate Petitioner's due process rights.

       Petitioner's Ground Twelve should be  **DENIED**.

### 7. Ground Nine

       In Ground Nine, Petitioner contends his Fifth, Sixth, Eighth, and Fourteenth Amendment rights were violated by prosecutorial misconduct during closing arguments when the prosecutor told the jurors they would need to determine whether the murder conviction was committed in the first or second degree.  (Doc. No. 4 at 17, citing Lodgment No. 6 Vol. 5 at 884.) Petitioner asserts this specifically affected his trial as there was no verdict form provided for second degree murder or a lesser-included offense instruction.  (*Id.*)  Respondents assert that the prosecutor's argument during

---

[16] This court addresses the reasonableness of this finding under Ground Ten.

closing was, although a bit confusing, technically correct and therefore not misconduct worthy of habeas relief.  (Doc. No. 54 at 15-16.)  Respondents argue that although the facts of Petitioner's case demonstrate that he either committed a first-degree murder or no homicide at all, he was still entitled to a jury finding regarding the degree of the crime.  (*Id.*)  Respondents point to a jury instruction that was given at the second trial that provided as much.  (*Id.*, citing Lodgment 4 Vol. 2 at 333.)  This Court will review Ground Nine *de novo*, as the state court did not reach the merits and therefore there is no state court decision to which to accord deference.  *See Pirtle*, 313 F.3d at 1167.

During closing arguments at the retrial, the prosecutor argued the following:

> Now, you're going to receive a verdict form for both defendants and you will be asked to make a finding at the end that either they're guilty or not guilty, and then whether or not it's first degree or second degree. . . . The last part of the instruction on provocative act murder will tell you a provocative act murder which occurs during the commission of a robbery when there was in the minds of the perpetrators of such robbery the specific intent to commit a robbery is murder of the first degree.  In other words, was there a robbery in progress that he intended to commit at the time of the death, at the time of the death which resulted from his provocative act.  Ultimately, if you decide the robbery was still in progress, which the law tells you it was, and I don't think you'll hear a bit of argument that it wasn't, then you make a finding that this is a first-degree murder.

(Lodgment 6 Vol. 5 at 883-84.)  The jury instruction on provocative act murder given to the jury at retrial reflected the prosecutor's comments and stated that, "[a] provocative act murder which occurs during the commission of the crime of robbery, when there was in the mind of the perpetrators of such robbery, the specific intent to commit robbery, is murder of the first degree."  (Lodgment 4 Vol. 2 at 296.)  As discussed in relation to Ground Twelve, Petitioner's counsel specifically stated they would not ask for an instruction on second-degree murder given the law and facts of the case and the jury did not receive an instruction on second-degree murder.  (*See* Lodgment 6 Vol. 5 at 854 & Lodgment 4 Vol. 2 at 295-96.)  The verdict form given to the jury for Petitioner stated, "We, the jury in the above entitled cause, find the defendant, James Lima, [guilty] [not guilty] of the crime of Murder, in

violation of Penal Code section 187(a), as charged in Count One of the Amended Information.  We further find the Murder [was] [was not] Murder in the first degree."  (Lodgment 4 Vol. 2 at 333.)

Prosecutorial misconduct is cognizable in federal habeas corpus. "[T]he appropriate standard of review for such a claim on writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation and citation omitted).  A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." *Id.*; *Smith v. Phillips*, 455 U.S. 209, 219 (1982) (noting, "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor").  Under *Darden*, the first issue is whether the prosecutor's remarks were improper; if so, the next question is whether such conduct infected the trial with unfairness. *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005). A prosecutorial misconduct claim is decided "on the merits, examining the entire proceedings to determine whether the prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process."

The Court does not find the prosecutor's remarks regarding second-degree murder improper.  Although there was no jury instruction on second-degree murder and the verdict form did not specifically ask whether it was second-degree murder, the jury was required to make the determination on the verdict form whether it was murder in the first degree.  (Lodgment 4 Vol. 2 at 333.) The prosecutor accurately stated that the jury would first determine guilt for murder on the verdict form and then be asked whether it was in the first degree.   If the jury had found it was not murder in the first-degree, it would have been murder in the second degree.  *See* Cal. Penal Code §189 ("All other kinds of murders are of the second degree."); (Lodgment 6 Vol. 5 at 933).  The Court agrees with Respondents; while the remark about second-degree murder may have been slightly confusing, it was

not improper.  The Court also notes that the challenged remark was made by the prosecutor prior to the trial court judge changing the jury instructions and verdict form to take out references to second-degree murder.  (*See id.* at 931-34.)

Even assuming the remark was improper, after examining the entire retrial proceedings, the Court does not find the prosecutor's remarks regarding second-degree murder during closing argument, which essentially mirrored the jury instructions, infected Petitioner's retrial with unfairness so as to make his resulting first degree murder conviction a denial of due process.   Under California Penal Code section 1157, when a crime is distinguished into degrees, a defendant is entitled to a jury finding indicating the degree of the crime.  Cal. Penal Code § 1157.  The verdict form provided as much by asking the jury whether the murder was murder in the first degree.  The jury found that Petitioner was guilty and that the murder was murder in the first degree.  In California, the provocative act doctrine has been consistently applied to convictions for first-degree murder.  *See Bradshaw v. Richey,* 546 U.S. 74 (2005).

To the extent Petitioner's Ground Nine is complaining about the failure to include jury instructions on lesser-included offenses, the Court notes its discussion in Ground Twelve.  Defense counsel specifically did not request an instruction on second-degree murder, noting that one would be unwise and legally incorrect.  (Lodgment 6 Vol. 5 at 854.) Petitioner has pointed to no evidence supporting the giving of a second-degree murder instruction and therefore has not demonstrated any prejudice even assuming an error.  *See Brecht*, 507 U.S. at 637.  On appeal following his retrial, the California Court of Appeal found Petitioner's conduct satisfied the implied malice necessary for the elements of provocative act murder, which is murder in the first degree.  (Doc. No. 6-9 at 14.)  This court accords deference to the state court's finding.  *See Pirtle*, 313 F.3d at 1167. The Court finds the failure to give a second-degree murder instruction when one was specifically not requested, the

- 48 -

instruction did not support the theory of defense, and there was no evidence supporting the instruction did not make Petitioner's retrial fundamentally unfair or deny Petitioner a meaningful opportunity to present a complete defense.   Accordingly, the lack of a second-degree murder instruction did not violate Petitioner's due process rights.

For the above stated reasons, Ground Nine should be **DENIED**.

### 8. Ground Ten

In Ground Ten, Petitioner argues that the application of California's provocative act doctrine in this case violated his Fifth, Sixth, Eighth, and Fourteenth Amendment rights, as the elements of actus reus and/or mens rea could not be satisfied.[17]   (Doc. No. 4 at 18.)   In support of this claim, Petitioner asserts that "during a pursuit from the police an officer traveled through a red signaled intersection at over 54 miles per hour, colliding and killing an innocent motorist.   Petitioner did not provoke the officer to use lethal force by reling [sic] on his patrol vehicle as a choice of weapon.   This specifically affected petitioner's trial." (*Id.*)   Respondents argue that Petitioner is challenging the fundamental fairness of California's provocative act doctrine as applied to this case, which is a challenge to an application of state law that precludes federal habeas relief. (Doc. No. 44-1 at 6, citing *Bradshaw v. Richey*, 546 U.S. 74, 75-76 (2005).)   Respondents contend that Petitioner's argument that the undisputed evidence regarding Petitioner's flight from the robbery and ensuing high speed chase was insufficient as a matter of law to satisfy the provocative act doctrine must fail due to the California Court of Appeal's decision affirming the conviction and holding that Petitioner's conduct satisfied the elements of provocative act murder.   (*Id.* at 6-7.)   The California Supreme Court was silent as to the merits of this ground in its denial of the state habeas petition, thus this Court will look through to the decision of the California Court of Appeal on direct appeal. *See Ylst,* 501 U.S. at 804.

---

[17]The Court will discuss Petitioner's arguments regarding the due process requirement of fair warning that the provocative act doctrine applies to the conduct in this case in its discussion of Ground Eleven, as that claim more specifically raises such a challenge.

This Court will give deference to the state court's finding, and thus review whether the decision was contrary to or involved an unreasonable application of federal law. *See Williams,* 529 U.S. at 403.

On direct appeal following his retrial, Petitioner asserted that the provocative act doctrine is inapplicable to this case as the death of the innocent motorist was the result of a negligent or reckless act, as opposed to a deliberate and intentional use of lethal force.[18]  (Doc. No. 6-9 at 2.)  In rejecting Petitioner's contention, the court of appeal held:

> As we stated in Lima I, when a defendant or his accomplice commits a provocative act and his victim or a police officer kills a third party in reasonable response to that act, the defendant is guilty of murder even though he did not act with malice aforethought. *(People v. Gilbert* (1965) 63 Cal.2d 690, 704–705, judgment vacated on other grounds in *Gilbert v. California* (1967) 388 U.S. 263.) A provocative act is one that is deliberately performed by the defendant or his accomplice with conscious disregard for human life and that has natural consequences dangerous to human life. (CALJIC No. 8.12.) Any act that is "'fraught with grave and inherent danger to human life'" is sufficient to establish that the defendant acted with conscious disregard for human life. *(Taylor v. Superior Court* (1970) 3 Cal.3d 578, 584, overruled on other grounds in *People v. Antick* (1975) 15 Cal.3d 79, 92, fn. 12.)
>   Attempting to escape the scene of a robbery by initiating a high-speed and reckless chase, where the defendant ran red lights and stop signs, collided with one vehicle and almost collided with several others, constitutes "'highly dangerous'" conduct. *(People v. Fuller* (1978) 86 Cal.App.3d 618, 628 [second degree murder conviction resulting from car chase].) That conduct is sufficient to support a finding that a defendant has acted with conscious disregard for human life. *(People v. Satchell* (1971) 6 Cal.3d 28, 33–34, fn. 11, overruled on other grounds in *People v. Flood* (1998) 18 Cal.4th 470, 490, fn. 12 [high-speed chase sufficient to permit jury to find implied malice for purposes of establishing second degree murder].)
>   Lima asserts, however, that the provocative act doctrine is inapplicable here because it was intended to apply only to "deaths by gunfire at the hands of persons other than the felons." In support of this contention Lima points out that all Supreme Court cases applying the doctrine have involved shootings.

[18]In discussing Petitioner's appeal, the court of appeal noted that, "Lima does not assert the evidence is insufficient to show that his actions constituted a conscious disregard for human life, but rather that for the provocative act theory of murder to apply, the victim's death must result from a deliberate use of lethal force with an intent to kill." (Doc. No. 6-9 at 9.)  In the court of appeal's decision following his first trial, the court addressed Petitioner's contention that there was insufficient evidence to support provocative act murder because his conduct in evading arrest did not show a conscious disregard for human life.  (*Id.*)  The court rejected Petitioner's contention and found that "engaging in a high-speed chase, while ignoring traffic signals and stop signs constituted 'highly dangerous' conduct sufficient to establish conscious disregard in support of a provocative act theory of murder."  (*Id.*)  In Ground Ten, Petitioner raises the same ground raised on direct appeal following his retrial, and does not argue there was insufficient evidence to support that his conduct showed a conscious disregard for human life.

However, while Lima is correct that historically the provocative act doctrine has been most often applied to gun battles, that fact does not make it inapplicable to this case. No case has ever limited the doctrine to gun battles. Rather, it applies to any conduct that is "'fraught with grave and inherent danger to human life'" so as to show a conscious disregard for human life. (CALJIC No. 8.12; *Taylor v. Superior Court*, *supra*, 3 Cal.3d at p. 584.)

Cases applying the implied malice element necessary to convict a defendant of second degree murder also demonstrate that engaging in a reckless, dangerous car chase falls within the provocative act doctrine. The showing of malice necessary to prove both second degree murder and provocative act murder is implied malice. (*People v. Cervantes* (2001) 26 Cal.4th 860, 868; *People v. White* (1995) 35 Cal.App.4th 758, 768; *People v. Superior Court (Shamis)* (1997) 58 Cal.App.4th 833, 844.) "'[M]alice may be implied [if the] defendant [commits] an act with a high probability that it will result in death and does it with a base antisocial motive and a wanton disregard for human life.'" (*Shamis*, *supra*, 58 Cal.App.4th at p. 844; *Pizano v. Superior Court* (1978) 21 Cal.3d 128, 134.)

In the context of second degree murder prosecutions, an attempt to evade police

using a high-speed vehicle chase has been held sufficient to demonstrate implied malice through a conscious disregard for the safety of others. For example, in *People v. Fuller*, *supra*, 86 Cal.App.3d 618, the Court of Appeal found a similar high-speed chase where the defendant ran a red light and killed an innocent driver sufficient to demonstrate the implied malice necessary for second degree murder. . . .

As in *Fuller*, the facts in this case demonstrate that Lima fled police at high speeds and in a reckless manner, showing a conscious disregard for the obvious danger to human life. Lima's conduct satisfies both the implied malice necessary for second degree murder and the elements of provocative act murder: an intentional act that is likely to cause death, committed with a conscious disregard for life. (*People v. Nieto Benitez* (1992) 4 Cal.4th 91, 104.)

(Doc. No. 6-9 at 11-15.)

Petitioner asserts that his trial was affected because his conduct in participating in a high speed chase fails to satisfy the elements of actus reus and mens rea for provocative act murder because he did not provoke the officer to use lethal force. This is a challenge to the state court's determination of whether as a matter of law the state's provocative act doctrine applies when the alleged provocative act is a high speed chase. The Supreme Court has repeatedly held "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal

court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle*, 502 U.S. at 67–68; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975)).

The court of appeal specifically found that Petitioner's conduct in evading the police by engaging in a high-speed, dangerous chase satisfied the requirement of an intentional act that is likely to cause death and the requirement of having done the act with conscious disregard for life.  In concluding Petitioner satisfied both the actus reas and mens rea components of the crime, the court cited precedent where fleeing police at high speeds showed a conscious disregard for life and thus met the requirements for provocative act murder. (Doc. No. 6-9 at 14-15.)  The state court held the actus reus requirement of an intentional act likely to cause death and mens rea requirement of implied malice were therefore met by Petitioner's conduct and he could be found guilty of provocative act murder.

This court accords deference to the state court's finding, and therefore cannot disagree with the substance and interpretation of the state law.  *See Williams,* 529 U.S. at 403.  The decision by the court of appeal was neither contrary to nor an unreasonable application of established federal law.  Accordingly, Ground Ten should be **DENIED**.

### 9. Ground Eleven

In Ground Eleven, Petitioner contends the provocative act is too broadly defined, and thus unconstitutional.[19]  (Doc. No. 4 at 19.) Ground Ten and Ground Eleven are similar challenges and overlap to some extent. Although claiming the provocative act is too broadly defined in this ground,

---

[19]  Petitioner argues the provocative act doctrine is "overly broad," which is generally associated with the First Amendment.  However, he cites the Fourteenth Amendment and *Schad*.  Therefore, this Court interprets this as arguing that the statute is vague.  *See Schad v. Arizona*, 501 U.S. 624, 632-33 (1991) ("The axiomatic requirement of due process that a statute may not forbid conduct in terms so *vague* that people of common intelligence would be relegated to differing guesses about its meaning, [citations omitted], carries the practical consequence that a defendant charged under a valid statute will be in a position to understand with some specificity the legal basis of the charge against him.") However, Petitioner advances no argument as to how the provocative act doctrine is so vague, and so the Court will only address his argument that applying the doctrine to the facts of his case was fundamentally unfair.  (*See* Doc. No. 50 at 9-10.)

Petitioner really argues the provocative act doctrine as applied to his case was fundamentally unfair because the application constituted an unforeseeable and retroactive judicial expansion of the doctrine and did not provide Petitioner fair notice of the contemplated conduct that violates the doctrine.  (Doc. No. 50 at 9-10.)  Respondents argue, as with Ground Ten, this claim fails because it also concerns the definition and application of state law.  (Doc. No. 54 at 16.)  This Court will review Ground Eleven *de novo*, as the state court did not reach the merits and therefore there is no state court decision to which to accord deference.  *See Pirtle*, 313 F.3d at 1167. However, the California Court of Appeal, in its discussion of Petitioner's challenge to the application of the provocative act doctrine, made some findings relevant to this claim.

In denying Petitioner's claim regarding the provocative act on direct appeal, the California Court of Appeal noted that while historically the provocative act doctrine has applied to gun battles, the doctrine applies to the facts of this case:

> Lima cites *People v. Caldwell* (1984) 36 Cal.3d 210, as supporting his position that provocative act murder is not applicable to high-speed vehicle chases. In that case, three robbers fled a restaurant robbery in a car, with officers in pursuit. (*Id.* at pp. 214–215.) At the end of the pursuit, one robber fired at police as the police rammed the suspects' car. (*Id.* at p. 215.) Another robber then pointed a gun out of his window, ignoring demands that he drop the weapon. (*Ibid.*) At the same time a third robber, the driver of the vehicle, got out of the car with a handgun. (*Ibid.*) The police then opened fire and killed the second robber. (*Id.* at pp. 215–216.)
>
> The California Supreme Court affirmed the murder convictions of the first and third robbers. In doing so, it found that the driver exiting the car with a gun was sufficient for a finding of provocative act murder. (*People v. Caldwell*, *supra*, 36 Cal.3d at p. 218.) The high court then stated, however, that it might be difficult to show a causal connection between the third robber's driving and the ensuing gun battle. (*Id.* at p. 219.) Nevertheless, the court went on to hold that the reckless driving could have been the provocative act supporting the murder convictions. (*Id.* at pp. 219–220.) Thus, the *Caldwell* case actually supports the People's position, not Lima's. The high court's concern there was the issue of proximate cause because the shooting occurred after the vehicle had stopped, not whether a high-speed chase is the type of action that could be considered a provocative act. (*Ibid.*) The court ultimately concluded that the police chase could provide the factual support for provocative act murder. (*Ibid.*)
>
> Lima also cites *People v. Cervantes*, *supra*, 26 Cal.4th 860 to support his

position, pointing to the following language from that case: "The provocative act murder doctrine has traditionally been invoked in cases in which the perpetrator of the underlying crime instigates a gun battle, either by firing first or by otherwise engaging in severe, life-threatening, and usually gun-wielding conduct, and the police, or a victim of the underlying crime, responds with privileged lethal force by shooting back and killing the perpetrator's accomplice or an innocent bystander." (*Id.* at p. 867.) Lima asserts that this language shows that provocative act murder is only intended to apply to gun battles. However, as discussed above, while provocative act murder has traditionally involved cases where the defendant instigates a gun battle, it is not by definition limited to such factual situations. Neither its elements nor any case law interpreting this doctrine support such a limitation. Since Lima's attempt to escape the scene of a robbery by engaging in a high-speed, dangerous chase was an intentional act committed with a conscious disregard for life, the provocative act doctrine applies.

(Doc. No. 6-9 at 14-15.)

Petitioner contends the provocative act doctrine, as shaped by California law, is meant to apply to deaths by gunfire and should not be expanded to the facts of this case.  (Doc. No. 50 at 9.) Thus, Petitioner argues the application of the doctrine to his case was fundamentally unfair, because it constituted an unforeseeable and retroactive expansion of the doctrine. (*Id.* at 10.)

The Due Process Clause demands criminal statutes provide "fair warning" as to what the law intends to punish.  U.S. Const. amend. V; U.S. Const. amend. XIV, § 1; *see United States v. Lanier*, 520 U.S. 259 (1997).  The Due Process Clause prohibits a court from applying a criminal statute to conduct neither identified by the statute nor disclosed by prior judicial decisions.  *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926).  This requirement provides that once a court interprets a statute identifying conduct as criminal, a court may not apply that interpretation retroactively.  *Bouie v. City of Columbia*, 378 U.S. 347, 352 (1964).  The effect of doing so deprives defendants of due process of law, because there is no fair warning to indicate the contemplated conduct constitutes a crime.  *Id.* at 355.

/ / /

/ / /

Petitioner asserts the provocative act doctrine is inapplicable to his case, as historically it was intended to apply only to deaths by gunfire.[20]  (Doc. No. 50 at 9.)  No California Court, however, has restricted the doctrine to specifically apply to gun deaths.  Rather, the doctrine applies to any conduct in the commission of a robbery that is inherently dangerous to human life and as such shows a conscious disregard for human life.  *Taylor v. Superior Court,* 3 Cal. 3d 578, 584 (1970).  The doctrine has been consistently applied for more than four decades, and no court has reduced the doctrine to apply specifically to gunfire.  *People v. Caldwell*, 36 Cal. 3d 210, 219 (1984).  As noted by the court of appeal in denying Petitioner's claim, the California Supreme Court previously held reckless driving could support a provocative act murder conviction.  *Id.*

Due process guarantees defendants have "fair warning" as to what constitutes criminal conduct.  U.S. Const. amend. V; U.S. Const. amend. XIV, § 1.  In applying this standard, based upon the state's prior judicial decisions regarding provocative act murder and high speed chases, Petitioner had fair warning and the application to his case was not an unforeseeable or retroactive expansion of the doctrine.  (*See* Doc. No. 6-9 at 14-15.)  Therefore, the Court finds no due process violation in the application of the California provocative act doctrine to Petitioner's case; accordingly, Ground Eleven should be **DENIED**.

**10.  Ground Thirteen**

In Ground Thirteen, Petitioner argues the trial court did not assist the jury on a point of law in violation of the Sixth, Eighth, and Fourteenth Amendments and his right to a fundamentally fair trial. (Doc. 4 at 21.)  Petitioner's claim is based on the jury instruction for "Murder–Killer other than Perpetrator of Underlying Crime," CALJIC No. 8.12, that specifically asked the jurors to deliberate

---

[20] In his Traverse to Respondent's Answer, Petitioner argues the provocative act doctrine is inapplicable as it was intended to apply to deaths by gunfire.  (Doc. No. 50 at 9.)  Petitioner makes this argument under Ground Ten; however, this argument does not apply to the Ground Ten, concerning actus reus and mens rea deficiencies.  Instead, this argument should be addressed under Ground Eleven, which attacks the provocative act as overly broad and fundamentally unfair.

whether "during the commission of the robbery, James Lima also committed an intentional provocative act." (Lodgment 4 Vol. 2 at 295.)  The instruction stated:

> An "intentional provocative act" is defined as follows:
> 1. The act was intentional;
> 2. The natural consequences of the act were dangerous to human life, and
> 3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for human life.

(*Id.*)  During juror deliberations, the jury asked the judge, "Is there a legal definition of 'intentional' under intentional provocative act?"  (*Id.* at 329.)  The judge answered the jury question by stating "[t]here is no legal definition of the term 'intentional.'"  Petitioner contends this act by the judge constituted an error to properly instruct the jury, and thus violated due process.  (Doc. No. 58 at 13.)  Respondents' assert that the definition of legal terms is a matter of California law and therefore cannot support federal relief.  (Doc. No. 54 at 15.)  This Court will review Ground Thirteen *de novo*; the state court did not reach the merits,  so there is no state court decision to which to accord deference.  *See Pirtle*, 313 F.3d at 1167.

Claims of error in state jury instructions are generally a matter of state law and do not invoke a Constitutional question unless they amount to a deprivation of due process.  *Hayes*, 301 F.3d at 1086. A violation of due process occurs if a trial is fundamentally unfair. *Estelle*, 502 U.S. at 72–73. In challenging a jury instruction, the petitioner must show both that the instruction was ambiguous and that there was "a reasonable likelihood" that the jury applied the instruction in a way that relieved the state of its burden of proving every element of the crime beyond a reasonable doubt.[21] *Waddington*, 555 U.S. at 190-91 (2009) (citing *Estelle*, 502 U .S. at 72).  A "reasonable likelihood" is lower than

---

[21]Petitioner argues that the "reasonable likelihood" standard does not apply to this claim because the jury instruction failed to instruct on every necessary element.  However, the case Petitioner cites for this proposition holds that the "reasonable likelihood" standard does not apply when "the disputed instruction is erroneous on its face."  (Doc. No. 58 at 16, citing *Wade v. Calderon*, 29 F.3d 1312, 1321 (9th Cir. 1994) (finding constitutional error when special circumstance instruction failed to instruct the jury that it was required to find intent to inflict extreme physical pain in order to find it a murder involving infliction of torture.)

the "more likely than not" standard but higher than a mere "possibility." *Polk*, 503 F.3d at 910.  "In making this determination, the jury instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Waddington*, 555 U.S. at 191 (quotations and citations omitted). "The pertinent question is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Id.* (quoting *Estelle*, 502 U.S. at 72).

A determination that there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution establishes only that an error has occurred. *See Calderon*, 525 U.S. at 146.  If an error is found, the court also must determine that the error had a substantial and injurious effect or influence in determining the jury's verdict, *see Brecht*, 507 U.S. at 637, before granting relief in habeas proceedings. *See Calderon*, 525 U.S. at 146-47.

The prosecution's case required the jury to find the defendant had "specific intent" to evade the pursuing officer under a violation of the vehicle code.  (Lodgment No. 4 Vol. 2 at 304.)  Petitioner argues that by asking the judge for clarification as to the meaning of "intentional," it was clear the jury did not understand the instructions, and without clarification, the jury could not find he had the specific intent for the charged offense.  (Doc. No. 58 at 14.)  Petitioner argues the trial court should have instructed the jury that "the intentional act requires specific intent to commit the provocative act, which in this case, was evading a pursuing police officer" or should have referred the jury to the instructions that state that the intentional act requires specific intent.  (*Id.* at 15.)  According to Petitioner, because the judge did not provide this instruction or refer the jury to the proper instruction, the jury was not instructed as to every necessary element of the offense.  (*Id.* at 16.)

After reviewing the instructions as a whole and the complete trial record, the Court finds there was no reasonable likelihood that the jury applied the instructions regarding intent and the

provocative act in a way that relieved the state of its burden of proving every element beyond a reasonable doubt.  Petitioner argues that the "reasonable likelihood" standard does not apply to this claim because the jury instruction failed to instruct on every necessary element.  However, the case Petitioner cites for this proposition holds that the "reasonable likelihood" standard does not apply when "the disputed instruction is erroneous on its face."  (Doc. No. 58 at 16, citing *Wade v. Calderson*, 29 F.3d 1312, 1321 (9th Cir. 1994) (finding constitutional error when special circumstance instruction failed to instruct the jury that it was required to find intent to inflict extreme physical pain in order to find it a murder involving infliction of torture.)  Here, the jury was instructed that they had to find the provocative act was intentional and instructed that in order to find Petitioner committed the alleged provocative act that they must find he did so with the specific intent to evade the pursing peace officer.   (Lodgment 4 Vol. 2 at 295 & 304.)   Furthermore, the jury was also instructed on "Concurrence of Act and Specific Intent," CALJIC No. 3.31, which instructed the jury that they had to find Petitioner had the specific intent to commit the crime of robbery and the specific intent to commit a provocative act.  (*Id.* at 290.)  This instruction noted that the specific intent required for the crime of robbery and the crime of evading a pursuing police officer were included in the definition of those crimes set forth elsewhere in the instructions.  (*Id.* at 290.)  The trial judge's response to the jury note did not eviscerate the requirement of intent, as he simply stated in response that there is no legal definition of "intentional."  Therefore, the Court does not find the instructions erroneous on their face and finds the reasonable likelihood standard does apply.  In applying that standard, the Court finds no error as the instructions did not omit a necessary element of the crime because they specifically required the jury to find an intentional provocative act and the provocative act was defined as requiring specific intent to evade a pursuing peace officer.

Petitioner also cites *Wade* for the proposition that this Court cannot assume the jury inferred a missing element from other instructions given by the trial judge, and therefore argues the jury could not have concluded Petitioner had the required specific intent.  (Doc. No. 58 at 16.)  In *Wade*, the instructions given were divided into a guilt phase and special circumstance phase, where the jury was first asked to decide guilt and only *then* to determine if the murder was committed under a special circumstance.  *Wade*, 29 F.3d at 1320 (emphasis in original).  Due to the sequential nature of the instructions, the court held that it could not assume the jurors inferred the clearly missing element in the special circumstance instruction from the other instructions given for the guilt phase.  *Id.*  Unlike in *Wade*, the jury at Petitioner's retrial was to consider the instructions on provocative act murder, the concurrence of act and specific intent, and the alleged provocative act of flight from a pursing peace officer together in order to determine guilt. Therefore, the Court "presumes that jurors, conscious of the gravity of their task, attend closely to the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them." *Francis v. Franklin*, 471 U.S. 307, 324 n. 9 (1985).  The Court finds the jury was properly instructed as to every element of the provocative act doctrine and every element to find Petitioner committed the requisite provocative act with the necessary intent.  (*Id.*)  In light of the complete trial record and jury instructions as a whole, the Court finds the trial judge's failure to provide a legal definition of "intentional" did not make Petitioner's retrial fundamentally unfair and did not violate his due process rights.

Furthermore, even assuming the trial judge committed an instructional error, Petitioner has failed to show any actual prejudice resulting from the trial judge's response to the jury's question. (*See* Doc. No. 58 at 13-17.)  Accordingly, Ground Thirteen should be **DENIED**.

/ / /

**IV. Conclusion and Recommendation**

The undersigned magistrate judge submits this Report and Recommendation to United States District Judge Anthony J. Battaglia under 28 U.S.C. § 636(b)(1).  For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order:  (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered denying the Petition.

**IT IS ORDERED** that no later than **April 16, 2012,** any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **April 30, 2012**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: March 26, 2012

**BERNARD G. SKOMAL**

United States Magistrate Judge

06-CV-02388-AJB (BGS)