**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES LIMA, | CASE NO.        06-CV-02388-AJB (BGS) |
| Petitioner, | **ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY** |
| vs. | |
| MATTHEW CATE, Secretary, | |
| Respondent. | |

Petitioner James Lima ("Petitioner"), a state prisoner proceeding *in forma pauperis* and with counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Dkt. No. 1.) Subsequently, Petitioner filed a first amended petition ("FAP").  (Dkt. No. 4.)  Pursuant to 28 U.S.C. § 636(b)(1), Magistrate Judge Bernard G. Skomal filed a report and recommendation ("Report") recommending that the first amended petition be denied in its entirety.  (Dkt. No. 60.)  Respondent filed objections to the report and recommendation on April 10, 2012.  (Dkt. No. 61.)  Petitioner filed objections and a reply to Respondent's objections to the report and recommendation on May 29, 2012. (Dkt. Nos. 66 & 67.)  After a thorough review of the issues, the documents presented, and objections filed, the Court **ADOPTS** the Magistrate Judge's report and recommendation and **DENIES** the first amended petition for writ of habeas corpus.  The Court also **DENIES** a certificate of appealability. / / / /

1

**Procedural Background**

On November 15, 1999, Petitioner was found guilty, by jury, of one count of first degree murder in violation of California Penal Code ("Penal Code") section 187(a), one count of conspiracy to commit robbery in violation of Penal Code section 182(a)(1), two counts of first degree residential robbery while using a firearm in violation of Penal Code sections 211, 212.5(a) and 12022.53(b), two counts of false imprisonment by menace while personally using a firearm in violation of Penal Code sections 236, 237, 12022.5(a)(1), one count of evading a police officer causing injury/death in violation of Vehicle Code section 2800.3 and one count of sexual battery in violation of Penal Code section 243.4(d). (Resp't Lodgment 1 ("Lodgment") at 433-44.) On January 31, 2000, Petitioner was sentenced to twenty-five years to life in prison for murder, plus twenty years consecutive for the remaining convictions and firearm enhancements. (Id. at 454.)

On December 13, 2001, the California Court of Appeal, Fourth District, Division One reversed Petitioner's murder conviction and held that the felony-murder rule did not apply to the facts of Petitioner's case. (Dkt. No. 6-5 at 9, 19.) The California Court of Appeal rejected Petitioner's remaining contentions and affirmed Petitioner's convictions on all other counts. (Id. at 19.)

The government retried Petitioner on the murder charge, for which he was again convicted of first-degree murder. (Id. at 8.) On April 14, 2004, the California Court of Appeal affirmed the judgment in People v. Lima, 118 Cal. App. 4th 259 (April 14, 2004). (Dkt. No. 6-9.)

On May 20, 2004, Petitioner submitted a petition for review to the California Supreme Court, raising one claim for relief based on state law. (Dkt. No. 6-10.) The California Supreme Court denied the petition without comment on July 28, 2004. (Dkt. No. 6-11.)

On March 24, 2005, Petitioner filed a petition for writ of habeas corpus in the California Superior Court for the County of San Diego. (Dkt. No. 6-12.) On May 13, 2005, the Superior Court denied the petition holding all of Petitioner's claims either were, or could have been, raised on appeal, and the law does not allow a petitioner to re-litigate his case by way of a habeas corpus petition. (Dkt. No. 6-13.)

On November 29, 2005, Petitioner filed a habeas petition in the California Supreme Court.

2

(Dkt. No. 6-14.)  The California Supreme Court summarily denied the habeas petition on August 23, 2006, citing In re Dixon, 41 Cal. 2d 756 (1953) and In re Waltreus, 62 Cal. 2d 218 (1965).  (Dkt. No. 6-15.)

On October 27, 2006, Petitioner filed the instant petition for writ of habeas corpus in this Court alleging thirteen grounds for relief but without citation to any constitutional provisions or other federal law.  (Dkt. No. 1.)  The Court dismissed the petition without prejudice for failing to state a cognizable federal claim and instructed the Petitioner to file a first amended petition.  (Dkt. No. 3.)  On November 27, 2006, Petitioner filed the first amended petition, which is the operative pleading before the Court. (Dkt. No. 4.)

On January 25, 2007, Respondents moved to dismiss the amended petition.  (Dkt. No. 6.)  On May 22, 2007, Magistrate Judge Barbara L. Major issued a report and recommendation granting Respondents' motion to dismiss as to claims 1-9 and 11-13 based on procedural default and denied Respondents' motion to dismiss as to Claim 10.  (Dkt. No. 11.)  The district judge, at the time, adopted in part and rejected in part the report and recommendation, concluding AEDPA's one-year statute of limitations had run before Petitioner filed the First Amended Petition.  (Dkt. No. 22.)  As a result of this conclusion, the Court granted Respondents' motion to dismiss on statute of limitations and did not address the procedural grounds for dismissing twelve of Petitioner's thirteen claims.  (Id. at 11.)

On September 28, 2007, Petitioner filed a notice of appeal to the United States Court of Appeals for the Ninth Circuit.  (Dkt. No. 24 at 1.)  On May 14, 2009, the Ninth Circuit  reversed the district court's decision that Petitioner's first amended petition was untimely.  (Dkt. No. 40 at 4.)  The Ninth Circuit found that Petitioner was entitled to statutory tolling and the first amended petition was timely filed within the one-year statute of limitations.  (Id.)  The Ninth Circuit remanded the case to the district court to proceed with the merits of the first amended petition and whether any claims were procedurally defaulted under In re Dixon, 41 Cal. 2d 756 (1953).  (Id.)

On October 30, 2009, Respondents filed an Answer.  (Dkt. No. 44.)  Petitioner filed a Traverse on January 6, 2010.  (Dkt. No. 50.)  Respondents filed a Supplemental Memorandum of Points and Authorities in Support of Answer ("Supplemental Memo") on March 11, 2010.  (Dkt. No.

54.)  Petitioner filed a Supplemental Traverse on April 30, 2010.  (Dkt. No. 58.)

The case was transferred to the undersigned judge on April 29, 2010.  (Dkt. No. 57.)  On March 26, 2012, Magistrate Judge Skomal filed a report and recommendation denying the petition for writ of habeas corpus on the merits since the Court concluded that there was no procedural bar to Petitioner's claims.  (Dkt. No. 60.)  Respondent filed an objection on April 10, 2012.  (Dkt. No. 61.)  Petitioner filed an objection and a reply to Respondent's objections on May 29, 2012.  (Dkt. Nos. 66, 67.)

## Factual Background

The following factual background is taken from the Court of Appeal opinion in People v. Lima, 118 Cal. App. 4th 259 (April 14, 2004).  (Dkt. No. 6-9.)  The Court presumes these factual determinations are correct pursuant to 28 U.S.C. § 2254(e)(1).  Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence.  Id.; see also Parke v. Raley, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from such facts, are entitled to statutory presumption of correctness).

A.   *People's Case*

John Vo lived with his wife, My Ly Dang, his mother-in-law, Ho No, his two sons, aged seven and nine at the time, and his sister-in-law, Chi Ho.  Vo formerly owned a computer business.

On February 19, 1999, Vo was out of the house, and No, Ho, and Vo's two sons were at home.  Sometime after 2:00 p.m., No answered the door, and Lima was standing there, holding a pile of paper over a gun, which was pointed at her face.  Lima forced his way into the house, twisting No's left arm behind her back.  After entering the home, Lima put No on the ground near Vo's sons, who had been watching television, and bound her hands and feet with electrical wire.  Le (a co-defendant) came into the room and asked No, "Where's the money?"  No responded that she did not know.  Lima told Vo's sons to remain seated and asked them about computer chips.

Le went upstairs and found Vo's sister-in-law, Ho, in an upstairs bedroom.  He tied her hands together with a phone cord and left to ransack another bedroom.  Ho was able to loosen the phone cord and used a cell phone to call 911.
Ho went downstairs, where she encountered Lima.  Lima instructed Ho to sit down, began to touch her breasts, and attempted to take off her pants.  Ho slid back and pleaded with Lima to stop, telling him she was only 17.  Le came downstairs and said "Go" in Vietnamese.  The men left through the front door, saying they would come back in a minute.  Lima and Le took $200 to $500 in cash as well as jewelry from the house.

4

In the meantime, San Diego Police Officer Daniel Burow, responding to the 911 call, arrived at Vo's home and saw a Ford Bronco with no license plates parked in front. Officer Burow could not see through the tinted windows of the Bronco and cautiously took cover behind a nearby tree while he waited for other officers to arrive. Less than a minute later, Lima and Le ran out of the house. Lima looked at Officer Burow's patrol car and then climbed quickly into the driver's seat of the Bronco. Le, who was carrying a bag, climbed into the passenger seat of the car.

Lima drove away. Officer Burow jumped into his police cruiser, turned on the lights and siren and followed the Bronco. Lima drove across some traffic pylons and made an illegal U-turn; as he did so, Le reached out of the passenger side window and threw a nine-millimeter pistol into some bushes. At about this time, Officer Michael Moller joined in the chase, following Officer Burow.

The Bronco was heading south as it approached an intersection with a four-way stop. Anticipating the Bronco's arrival, Officer Dewayne Glazewski had parked his patrol car, with lights flashing, across the northbound traffic lanes. However, the Bronco sped through the stop sign without stopping or slowing. Lima passed a truck that was stopped at a stop sign by driving into the oncoming traffic lane and made a "blind" turn at the intersection without stopping.

Lima then returned to the four-way intersection. He moved into the oncoming traffic lane to pass a waiting car, turned right in front of that car and continued to drive, at speeds of 50 to 60 miles per hour, through several red lights.

With the police still in pursuit, the Bronco became stuck in traffic at an intersection. After Officer Burow pulled up behind the Bronco, Lima drove up onto the sidewalk, passing cars on the right. As he did so, the Bronco struck a truck, knocking a side rearview mirror from it. Lima narrowly missed the signal post and made a right turn into the intersection against the red light. There was significant cross traffic in the intersection, and cars had to swerve or abruptly apply their brakes to avoid hitting the Bronco.

Lima then drove through another red light without stopping or braking. A driver who had started to pull her car out into the street from a nearby driveway saw the Bronco run the red light and quickly put her car into reverse to avoid being hit. As Lima sped through the intersection, he almost collided with a small white pickup truck.

Following closely behind the Bronco, Officer Burow's patrol car broadsided another car that was crossing through the intersection. Officer Burow quickly got out of his car, pulled the driver, June Meng, from her car and performed CPR on her for several minutes. However, Meng died as a result of the crash. Officer Burow was transported to the hospital. He suffered a whiplash injury and a contusion on his right elbow.

Officer Glazewski continued to pursue the Bronco, which sped through another stop sign and drove into a residential area, where Lima parked it. Lima and Le got out of the Bronco, and Officer Glazewski attempted to chase Le, but lost sight of him. After a search involving a police dog, officers found Le hiding in a juniper bush. Officers recovered cash from Le and found a bag with jewelry and money in the Bronco.

5

Meanwhile, motorist Casey Stoute, who earlier had seen the Bronco being chased, pulled over to see what was happening.  Lima came toward him from some bushes in which he had been hiding.  Stoute called 911 and pretended to be talking to his girlfriend as Lima approached him.  Lima entered Stoute's car, asking for a ride.  Stoute insisted that Lima pat himself down and then agreed to give Lima a ride.  Stoute drove around, continuing to talk to the 911 operator, while pretending that he was talking to his girlfriend.  They stopped for gas at one point and Lima gave Soute $10 for gas.  They continued driving until police stopped the car and arrested Lima.  As police approached the car, Lima threw a gold bracelet towards Stoute.

B.    *Defense Case*

A collision reconstruction expert testified that Officer Burow struck the victim's car at about a 90-degree angle and was traveling approximately 53 miles per hour at the time.  The victim was traveling about 20 miles per hour.  Neither vehicle left any skid marks at the collision site.  Officer Burow was 500 to 600 feet from the intersection when the light in his direction turned red.  Several motorists estimated that the speed of the cars involved in the pursuit ranged anywhere from 45 to 80 miles per hour.  Estimates of the distances between Lima's Bronco and the pursuing officers also varied considerably, from as little as one or two seconds to 30 seconds.

Le testified that it was his idea to rob Vo's home.  He believed that Vo had valuable computer chips in the house.  Le threw the gun out of the Bronco during the chase.  He was aware that the police were chasing them and asked Lima to stop several times.

(Dkt. No. 6-9 at 4-8.)

## Discussion

### A.    Scope of Review of Magistrate Judge's Report and Recommendation

The district court "shall make a *de novo* determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate."  28 U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72(b).  A district court may adopt those parts of a Magistrate Judge's report to which no specific objection is made, provided they are not clearly erroneous.  Thomas v. Arn, 474 U.S. 140, 152-53 (1985).

Although Petitioner generally argues that he objects to all the denials by the Magistrate Judge, he does not provide specific objections to Grounds Three, Five, Six, Seven, Eight, Nine, Ten, Eleven and Twelve.  If no specific objections are made, the district court may adopt those parts of a Magistrate Judge's report to provided they are not clearly erroneous.  See Thomas, 474 U.S. at 152-53.  After a review of the report and recommendation and finding the Magistrate Judge's conclusion

6

not clearly erroneous, the Court ADOPTS the report and recommendation and DENIES the first amended petition for writ of habeas corpus as to Grounds Three, Five, Six, Seven, Eight, Nine, Ten, Eleven and Twelve.

Petitioner filed specific objections as to Grounds, One, Two, Four and Thirteen.  Defendant also filed objections to the report and recommendation regarding procedural default.  Therefore, the Court will conduct a *de novo* review of these claims.

**B.     Procedural Default**

Respondent contends that twelve (all grounds except Ground Ten) of Petitioner's thirteen grounds for relief are procedurally defaulted.  Additionally, Respondent argues that Ground One and Ground Five are procedurally defaulted because Petitioner did not properly exhaust the claims, as he did not raise either one of these claims on direct appeal to the California Supreme Court in a petition for review.  In opposition, Petitioner argues that the Dixon bar is not adequate and has not been regularly and consistently applied.

The procedural default rule is based on the principle that federal courts "will not review a question of federal law decided by a state court if the decision of the court rests on a state law ground that is independent of the federal question and adequate to support the judgment."  Coleman v. Thompson, 501 U.S. 722, 729 (1991).  The state rule is only "adequate" if it is "well-established and consistently applied."  Bennett v. Mueller, 322 F.3d 573, 583 (9th Cir. 2003).  The state rule must also be "independent" in that it is not "interwoven with federal law."  Park v. California, 202 F.3d 1146, 1152 (9th Cir. 2000) (quoting Michigan v. Long, 463 U.S. 1032, 1040-41 (1983)).  If the federal court finds an independent and adequate state procedural ground, the Court may still reach the merits of a procedurally defaulted claim if the petitioner can demonstrate cause for his failure to satisfy the state procedural rule and prejudice arising from the default, or if he can demonstrate that a fundamental miscarriage of justice would result from the Court not reaching the merits of the defaulted claims.  Coleman, 501 U.S. at 750.

Procedural default is an affirmative defense which must be adequately pled by the government.  See Bennett, 322 F.3d at 585-86.  In response, the burden shifts to the petitioner to place that defense

in issue by alleging facts that demonstrate the inadequacy of the state procedure.  Id.  The ultimate burden of proof, however, is on the government.  Id.

In this case, procedural default has been pled by Respondent.  The Court need not determine whether Petitioner has made a sufficient showing so as to shift the burden back to Respondent or whether Respondent has carried the ultimate burden of demonstrating that California consistently applies the procedural bar at issue here.  The interests of judicial economy favor reaching the merits of Petitioner's claims regardless of the adequacy of the procedural bar applied by the state court.

The Ninth Circuit has indicated that "[p]rocedural bar issues are not infrequently more complex than the merits issues presented by the appeal, so it may well make sense in some instances to proceed to the merits if the result will be the same."  Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) (citing Lambrix v. Singletary, 520 U.S. 518, 525 (1997) ("We do not mean to suggest that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be.")).  District courts have applied the same rationale.  See Barnes v. Gonzales, No. 12-2076-JPR, 2012 WL 3745275, at *10 (C.D. Cal.  Aug. 28, 2012) ("Because it is easier to adjudicate this claim on the merits, however, the Court has done so in the interest of judicial economy."); Levi v. Almager, No. CV 08-4261-PSG (CW), 2011 WL 2672351, at *3 n.1 (C.D. Cal. May 6, 2011) (deciding merits of delayed access to law library claim rather than resolving the procedural-bar question first.).

In this case, judicial economy counsels reaching the merits of Petitioner's claims without a determination of whether the state procedural bar applied in this case was clearly established and had been consistently applied by the California courts.  See Levi, 2011 WL 2672351, at *3 n.1.

**C.     Standard of Review**

28 U.S.C. § 2254(a) provides:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).  As amended, the AEDPA now reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody

1
2

pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was <u>contrary to</u>, or involved an <u>unreasonable application</u> of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in State court proceeding.

6   28 U.S.C. § 2254(d) (emphasis added).

7   To obtain federal habeas relief, Petitioner must satisfy either § 2254(d)(1) or § 2254(d)(2).

8   <u>See</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 403 (2000).  The threshold question is whether the rule of law

9   was clearly established at the time petitioner's state court conviction became final.  <u>Id.</u> at 406.  Clearly

10  established federal law, as determined by the Supreme Court of the United States "refers to the

11  holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court

12  decision."  <u>Id.</u> at 412; <u>see also</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71 (2003).  However, Ninth Circuit

13  case law may be "persuasive authority for purposes of determining whether a particular state court

14  decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what

15  law is 'clearly established.'"  <u>Duhaime v. Ducharme</u>, 200 F.3d 597, 600 (9th Cir. 2000).  Only after

16  the clearly established Federal law is identified can the court determine whether the state court's

17  application of that law "resulted in a decision that was contrary to, or involved an unreasonable

18  application of" that clearly established Federal law.  <u>See</u> <u>Lockyer</u>, 538 U.S. at 71-72.

19  A state court decision is "contrary to our clearly established precedent if the state court applies

20  a rule that contradicts the governing law set forth in our cases" or "if the state court confronts a set

21  of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at

22  a result different from our precedent."  <u>Williams</u>, 529 U.S. at 405-406.  "A state-court decision

23  involves an unreasonable application of this Court's precedent if the state court identifies the correct

24  governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular

25  state prisoner's case" or "if the state court either unreasonably extends a legal principle from our

26  precedent to a new context where it should not apply or unreasonably refuses to extend that principle

27  to a new context where it should apply."  <u>Id.</u> at 407.  Under <u>Williams</u>, an application of federal law

28

1   is unreasonable only if it is "objectively unreasonable." <u>Id.</u> at 409.  Further, a state court's decision

2   results in a "decision that was based on an unreasonable determination of the facts in light of the

3   evidence presented in State court proceeding" if it "is so clearly incorrect that it would not be

4   debatable among reasonable jurists." <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1500 (9th Cir. 1997) (citations

5   omitted).

6        In making such a determination under AEDPA, the court looks to the state's last reasoned

7   decision.  <u>Avila v. Galaza</u>, 297 F.3d 911, 918 (9th Cir. 2002).  Where there is no reasoned decision

8   from the state's highest court, the Court "looks through" to the underlying appellate court decision.

9   <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 801-06 (1991).  A state court need not cite Supreme Court

10  precedent when resolving a habeas corpus claim.  <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002).  "[S]o long

11  as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court

12  precedent,]" <u>id.</u>, the state court decision will not be "contrary to" clearly established federal law.

13       When a federal habeas court is faced with reviewing a state court denial for which there is no

14  reasoned decision, however, the deferential standard under § 2254(d) cannot be applied because there

15  is "nothing to which we can defer."  <u>Luna v. Cambra</u>, 306 F.3d 954, 960 (9th Cir. 2002).  Under such

16  circumstances, "[f]ederal habeas review is not <i>de novo</i> . . . but an independent review of the record

17  is required to determine whether the state court clearly erred in its application of controlling federal

18  law."  <u>Delgado v. Lewis</u>, 223 F.3d 976, 982 (9th Cir. 2000).

19       It is only when a state court could not reach the merits of a claim (e.g. because a procedural

20  bar prevented it) that "AEDPA's standard of review does not apply."  <u>Killian v. Poole</u>, 282 F.3d 1204,

21  1208 (9th Cir. 2002).  In such a case, review by the federal court is <i>de novo</i>.  <u>Pirtle v. Morgan</u>, 313

22  F.3d 1160, 1167 (9th Cir. 2002); <u>see also</u> <u>Reynoso v. Giurbino</u>, 462 F.3d 1099, 1109 (9th Cir. 2006)

23  ("[w]hen it is clear, however, that the state court has not decided an issues, we review that question

24  <i>de novo</i>").

25       Petitioner specifically objects to Grounds One, Two, Four and Thirteen.

26  **1.    Ground One - Denial of Right to Self-Representation**

27       Petitioner claims his Sixth and Fourteenth Amendment rights were violated when the trial

28                                                     10

court denied him his right to self-representation.  (Dkt. No. 4 at 6.)  Lima contends that upon the reversal of his first conviction and remand to the trial court, he made a written Marsden[1] motion to relieve counsel and a written Faretta[2] motion to proceed in *pro per*, which were denied by the trial judge.  (Id.)  Petitioner asserts the denial of the right to represent himself specifically affected the outcome of his trial.  (Id.)  Respondents argue this claim should be denied because it was properly rejected on state habeas and on direct appeal.  (Dkt. No. 54 at 15-16.)

The magistrate judge concluded that since there was no state court record of Petitioner making a Faretta motion before his retrial by the state court and no record presented to the state court by Petitioner, the Court found that the state court's decision to deny relief was not based on an objectively unreasonable determination of the facts and recommended that this claim be denied. (Dkt. No. 60 at 16.)

In his objection, Petitioner argues that he made an extensive Faretta argument with the state court on August 12, 2002. In 2005, Petitioner requested a copy of the August 12, 2002 transcript but the state court informed him that while the minute order of August 12, 2002 indicated a written Marsden motion was filed with the court to relieve his public defender, no Faretta motion was made. (Dkt. No. 4 at 88.)  Petitioner is asking the Court to infer that he made a Faretta motion because typically after the state court denies a Marsden motion, defendants make a Faretta motion.

A defendant in a criminal case has the constitutional right to be represented by counsel and also, if he chooses, a right to represent himself.  Faretta v. California, 422 U.S. 806, 807 (1975).  The Sixth Amendment right to counsel may be waived by a defendant, so long as relinquishment of the right is knowing, and intelligent.  Id. at 835.  "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he

---

[1] People v. Marsden, 2 Cal.3d 118 (1970), is a California case dealing with a trial judge's obligations in deciding motions to substitute appointed counsel. Petitioner does not challenge the trial court's denial of his Marsden motion.

[2] Faretta v. California, 422 U.S. 806 (1975) held that the Sixth and Fourteenth Amendments include a "constitutional right to proceed without counsel when" a criminal defendant "voluntarily and intelligently elects to do so." Id. at 807

11

should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" Id. at 835 (citation omitted). The defendant must be aware of "[1] the nature of the charges and [2] the possible penalties, as well as [3] the dangers and disadvantages of self-representation in a complex area where experience and professional training are most helpful." United States v. Harris, 683 F.2d 322, 324 (9th Cir. 1982). Although no set formula or script has been required, the court must consider the defendant's "education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." Iowa v. Tovar, 541 U.S. at 77, 88 (2004).

The California Supreme Court was silent as to the merits of this ground in its denial of the state habeas petition. (Dkt. No. 6-15.) Thus this Court will look through to the decision of the California Superior Court. See Ylst, 501 U.S. at 804. The Superior Court of California denied the petition because it found no evidence of Petitioner's motion to represent himself in the second trial. (Dkt. No. 6-13 at 5.) The state court noted that no Faretta motion was found in the court file, no mention of it was in the Minute Orders and no copy of the Faretta motion was attached to the petition. (Id. at 5-6.) This Court must give deference to the state court's finding, and thus review whether the decision was based on an objectively unreasonable determination of the facts in light of the evidence presented in the state court proceeding. See Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). In the state court proceeding, Petitioner did not provide a copy of the Faretta motion he alleged he presented to the trial court, no Faretta motion was found in the court file and no mention of the Faretta motion was in the Minute Orders. (Id.) The Court concludes that the state court's decision to deny relief on this claim was not based upon an objectively unreasonable determination of the facts.[3] Accordingly, the Court DENIES the petition for writ of habeas corpus as to Ground One.

_____

[3]Petitioner argues that a letter from the superior court dated October 24, 2005 supports his position. Although this evidence was not presented in the superior court proceeding as it post-dates the superior court's May 13, 2005 decision, the Court notes that the letter only further supports the superior court's decision and does not aid Petitioner. The letter states, "[a]nother extensive review of the court files for your criminal matter indicates you filed a written Marsden motion with the court on August 12, 2002, asking the court to relieve your public defender . . . [n]either on this date, nor any subsequent date during your retrial, is there a record that you made a request to proceed in pro per." (Dkt. No. 4 at 88.) Petitioner has offered no other evidence that he made a Faretta motion before his retrial.

1  ////

2  ## 2.    Ground Two - Jury Instruction Error

3    In Ground Two, Petitioner claims the court of appeal violated his due process rights by

4  failing to adequately instruct the trial court on which principles to apply on retrial. (Dkt. No. 4 at 7.)

5  Petitioner asserts this lack of instruction left the trial court at a loss as to how to proceed with regards

6  to jury instructions at retrial, and thus his retrial was fundamentally unfair and violated his due process

7  rights.  (Id.)  Respondent asserts Petitioner's pleading is insufficient, as he does not indicate what

8  should or should not have occurred at the trial.  Respondent further argues that even if there was an

9  error, Petitioner did not suffer any prejudice.

10    The magistrate judge concluded that under the harmless-error standard, Petitioner failed to

11  allege how the trial court's difficulty in instructing the jury actually resulted in any jury instructional

12  error and failed to articulate how any error might be prejudicial.  (Dkt. No. 60 at 17.)  Lastly, the

13  magistrate judge added that Petitioner failed to cite any authority that requires an appellate court to

14  instruct a trial court as to jury instructions when remanding a case.  (Id.)

15    Petitioner objects contending that due process requires that Petitioner have a "fundamental

16  right to have a jury properly instructed and for the trial to be conducted under the principles articulated

17  from the Court of Appeals" and cites to Estelle v. McGuire, 502 U.S. 62, 72 (1991).

18    In Cupp v. Naughten, the United States Supreme Court presented the standard for jury

19  instruction error in habeas cases.  Cupp v. Naughten, 414 U.S. 141, 147 (1973).  The only question

20  for a federal habeas court is whether, "under the circumstances as a whole and given the evidence in

21  the case, the failure to give the requested instruction rendered the trial so fundamentally unfair as to

22  violate federal due process."  Duckett v. Godinez, 67 F.3d 734, 746 (1995) (citing Cupp, 414 U.S. at

23  147).  A single jury instruction "may not be judged in artificial isolation, but must be viewed in the

24  context of the overall charge."  Cupp, 414 U.S. at 146-47.  "An omission . . . is less likely to be

25  prejudicial than a misstatement of the law" and the petitioner bears an "especially heavy" burden.

26  Henderson v. Kibbe, 431 U.S. 145, 155 (1977).  "[I]t must be established not merely that the

27  instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some

28

13

1  [constitutional right]."  <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974).  An jury instruction

2  error will violate due process only when there is a reasonable likelihood that the jury has applied the

3  challenged instruction in a way that violates the constitution.

4          Even if the federal court finds that there was instructional error, a habeas petitioner is not

5  entitled to relief unless the instructional error "had substantial and injurious effect or influence in

6  determining the jury's verdict."  <u>Brecht v. Abrahamson</u>, 507 U.S.619, 637 (1993) (<u>quoting</u> <u>Kotteakos</u>

7  <u>v. United States</u>, 328 U.S. 750, 776 (1946).  Petitioner must demonstrate that the error resulted in

8  "actual prejudice."  <u>Id.</u>

9          The California Supreme Court was silent as to the merits of this ground in its denial of the

10  state habeas petition.  (Dkt. No. 6-15.)  Thus, this Court will look through to the decision of the

11  California Superior Court.  <u>See</u> <u>Ylst</u>, 501 U.S. at 804.  In its denial, the California Superior Court held

12  that even if the court agreed with Petitioner's claim that the first appellate decision failed to instruct

13  the second trial court, it would not overrule or alter a higher court's decision regarding retrial

14  instructions.  (Dkt. No. 6-13 at 5.)  The superior court, addressing Petitioner's concerns about the

15  confusion by the second trial court after the remand from the first appeal, also noted that "once the

16  uncertainty was clarified, a full trial followed by a full appeal took place. This would strongly indicate

17  that there was no bewilderment once that second trial began."  (<u>Id.</u>)

18          As the report and recommendation stated, <u>Estelle</u> does not stand for the proposition that the

19  court of appeal is required to instruct the trial court on jury instructions on remand or that the trial be

20  conducted under the principles articulated from the court of appeals.  <u>See</u> <u>Estelle</u>, 502 U.S. at 72.

21  Although there is authority that a retrial be conducted by the appellate court's mandate, Petitioner does

22  not provide any authority that an appellate court is required to provide specific guidance on jury

23  instructions when it remands a case.  Conclusory allegations without specific facts do not warrant

24  habeas relief.  <u>James v. Borg</u>, 24 F.3d 20, 26 (9th Cir. 1994).

25          If an appellate court's mandate and, or, opinion specifically directs the trial court to take

26  additional evidence or conduct a hearing, such directions must be followed by the trial court on

27  remand.  <u>See</u> <u>Poletti v. Comm'r of Internal Revenue</u>, 351 F.2d 345, 347 (8th Cir.1965) ("[A]n inferior

28

court has no authority to deviate from the mandate issued by an appellate court."). However, absent specific directions as to how to decide the issues on remand, it is within the lower court's discretion to determine what further proceedings are appropriate on remand. See id. at 347 ("trial court is free to pass upon any issue which was not expressly or implied disposed of on appeal."); Holliday v. Pac. Atlantic S.S. Co., 117 F. Supp. 729, 732 (D.C. Del. 1953) ("Where the mandate remands the case to the lower court 'with directions' to accomplish a certain act, but without indicating how such act shall be performed, there exists a large measure of discretion in the performance.").

Although the trial court commented that it had difficulties in drafting jury instructions on retrial, it had discretion to proceed with jury instructions absent specific instructions from the appellate court. No direct appeal was filed regarding jury instruction error. Furthermore, in this petition, Petitioner does not specify what jury instructions were omitted or improperly given in order for the Court to determine whether "under the circumstances as a whole and given the evidence in the case, the failure to give the requested instruction rendered the trial so fundamentally unfair as to violate federal due process." See Duckett, 67 F.3d at 746 (1995) (citing Cupp, 414 U.S. at 147). The Court concludes that Petitioner has not provided specific facts to support its conclusory allegation. See James, 24 F.3d at 26. Accordingly, the state court's decision was not "contrary to, or involved an unreasonable application of, clearly established Federal law." See 28 U.S.C. § 2254(d)(1). Therefore, Petitioner is not entitled to habeas relief on this claim and the Court DENIES the claim in Ground Three.

### 3. Ground Four - Prosecutorial Misconduct

In Ground Four, Petitioner alleges prosecutorial misconduct in violation of the Sixth, Eighth, and Fourteenth Amendments. (Dkt. No. 4 at 9.) Petitioner contends that during the trial, the prosecutor allowed the introduction of false testimony by police officers in violation of Napue v. Illinois, 360 U.S. 264, 269 (1959) and Pyle v. Kansas, 317 U.S. 214 (1942). (Id.; Dkt. No. 58 at 16.) Petitioner alleges that the prosecution was fully aware of the three police officers' written statements written after the high speed pursuit and that all three police officers' testimony conflicts with these police reports. (Dkt. No. 4 at 9.) Respondents argue that Petitioner has identified at most

inconsistencies in the evidence, but has not alleged that the prosecutor knowingly introduced false testimony.  (Dkt. No. 54 at 11.)

The report and recommendation concluded that after reviewing the stipulation from the first trial and the witness testimony, Petitioner had not established that the witnesses' testimonies regarding the collision was false or perjurious.  (Dkt. No. 60 at 24.)  Therefore, the report and recommendation concluded that the prosecutor did not knowingly offer false testimony.  (Id. at 25.)

Petitioner objects arguing that contrary to Respondent's contention, he is not required to demonstrate that the prosecutor had personal knowledge of the false evidence but Napue applies whenever a prosecutor knew or should have known that the testimony was false.  (Dkt. No. 66 at 6.)

"It is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment."  Napue v. Illinois, 360 U.S. 264, 269 (1959).  The same rule applies when the State, not soliciting false evidence, allows it to go uncorrected when it appears.  Id.  A conviction obtained using knowingly perjured testimony violates due process.  Mooney v. Holohan, 294 U.S. 103, 112 (1935).  The conviction "must be set aside if there is any reasonable likelihood that the false testimony could have affected the jury's verdict."  United States v. Bagley, 473 U.S. 667, 680 n. 9 (1985).

A claim under Mooney-Napue will succeed when "(1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) . . . the false testimony was material."  Hayes v. Brown, 399 F.3d 972, 984 (9th Cir. 2005) (en banc) (internal quotation marks and alteration omitted).  In determining materiality, the court looks at whether there is "any reasonable likelihood that the false testimony could have affected the judgment of the jury."[4]  Id. (quoting Belmontes v. Woodford, 350 F.3d 861, 881 (9th Cir. 2003)).  In sum, if the prosecution used perjured testimony that the prosecutor knew or should have known was false, and the testimony is material, that is, reasonably likely to have affected the verdict, the conviction must be reversed.  See United States v. Agurs, 427 U.S. 97, 103 (1976); Jackson v. Brown,

---

[4]Since there is a materiality standard under Napue, the Court need not conduct an additional harmless error analysis under Brecht v. Abrahamson, 507 U.S. 619 (1993).  Hayes, 399 F.3d at 984.

1   513 F.3d 1057, 1075–76 (9th Cir. 2008).

2       The California Supreme Court denied the petition on August 23, 2006.   (Dkt. No. 6-15.)

3   Since there is no reasoned decision from the California Supreme Court, the Court "looks through" to

4   the San Diego Superior Court decision.  See Ylst, 501 U.S. 801-06.  On May 13, 2005, the Superior

5   Court denied the petition explaining that this issue had already been dealt with by the trial and/or

6   appellate courts, or could have and/or should have been raised in one of the trials or appeals.  (Dkt.

7   No. 6-13.)  Since the court of appeal did not reach the merits of the claim, this Court's review of the

8   case is de novo.  See Pirtle, 313 F.3d at 1167.

9       Petitioner objects to the legal standard that the Magistrate Judge applied arguing that

10  Petitioner does not have to show the prosecutor had personal knowledge of the false evidence but

11  prosecutorial misconduct occurs when the prosecutor knows or should have known that testimony was

12  false.  Contrary to Petitioner's objections, the Magistrate Judge stated the correct legal standard  that

13  the prosecutor knew or should have known testimony was false.  (Dkt. No. 60 at 21.) The magistrate

14  judge's conclusion was based on whether the testimony of the officers was false, the first factor under

15  a Mooney-Napue claim.  Petitioner does not appear to object to the magistrate judge's analysis of the

16  facts supporting the claim for prosecutorial misconduct.

17      After a review of the magistrate judge's analysis and conclusion that false testimony was

18  presented and the relevant state courts documents, the Court concludes that, at most, there were minor

19  omissions in the police reports, not conflicting evidence.[5]  The record does not demonstrate that the

20  officers' testimony was false.  Therefore, the State did not knowingly use perjured testimony in

21  violation of Petitioner's constitutional rights.

22      **4.    Ground Thirteen - Jury Instruction Error**

23      In Ground Thirteen, Petitioner argues the trial court did not assist the jury on a point of law

24  in violation of the Sixth, Eighth, and Fourteenth Amendments and his right to a fundamentally fair

25  _____

26      [5]Although the instant case does not involve inconsistencies, it has even been held that mere
    inconsistencies are insufficient to prove perjury.  United States v. Jordan, 150 F.3d 895, 900 (8th Cir.
27  1998)

28                                          17

trial. (Dkt. 4 at 21.) Petitioner's claim is based on the jury instruction for "Murder–Killer Other Than Perpetrator of Underlying Crime," that specifically asked the jurors to deliberate whether "during the commission of the robbery, James Lima also committed an intentional provocative act." (Lodgment 4 at 295.) The instruction stated:

> An "intentional provocative act" is defined as follows:
> 1.   The act was intentional;
> 2.   The natural consequences of the act were dangerous to human life, and
> 3.   The act was deliberately performed with knowledge of the danger to, and with conscious disregard for human life.

(Id.) During juror deliberations, the jury asked the judge, "Is there a legal definition of 'intentional' under Intentional Provocative Act?" (Id. at 329.) The judge answered the jury question by writing, "[t]here is no legal definition of the term 'intentional.'" (Id.) Petitioner contends this act by the judge constituted an error to properly instruct the jury, and thus violated due process. Respondent asserts that the definition of legal terms is a matter of California law and therefore cannot support federal relief.

The magistrate judge concluded that "the jury was properly instructed as to every element of the provocative act doctrine and every element to find Petitioner committed the requisite provocative act with the necessary intent." (Dkt. No. 60 at 59.) The judge concluded "that the trial judge's failure to provide a legal definition of "intentional" did not make Petitioner's retrial fundamentally unfair and did not violate his due process rights." (Id.)

Petitioner objects arguing that the trial court judge's failure to provide the jury with an appropriate definition violated his right to due process. He asserts that the jury was not instructed as to every element of the charged offense because the trial court instructed the jury that there was no legal definition of "intentional" as used in the "intentional provocative act." According to Petitioner, because the judge did not provide this instruction, that an intentional act "requires specific intent to commit the provocative act, which in this case, was evading a pursuing police officer", or refer the jury to the proper instruction, the jury was not instructed as to every necessary element of the offense. Petitioner argues that the jury's question as to the meaning of "intentional" shows that the jury did not understand the instructions, and without clarification, they could not find he had the specific intent

for the charged offense.

The California Supreme Court denied the petition on August 23, 2006.   (Dkt. No. 6-15.) Since there is no reasoned decision from the California Supreme Court, the Court "looks through" to the San Diego Superior Court decision.  See Ylst, 501 U.S. 801-06.  On May 13, 2005, the Superior Court denied the petition explaining that the claim had already been dealt with by the trial and/or appellate courts, or could have and/or should have been raised in one of the trials or appeals.  (Dkt. No. 6-13.)  Since the court of appeal did not reach the merits of the claim, this Court's review of the case is de novo.  See Pirtle, 313 F.3d at 1167.

Due process requires that jury instructions in criminal trials give effect to the prosecutor's burden of proving every element of the crime charged beyond a reasonable doubt."  Middleton v. McNeil, 541 U.S. 433, 437 (2004).  "Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." Id.  Federal habeas relief is available for jury instruction errors that "so infected the entire trial that the resulting conviction violates due process," thus rendering the trial fundamentally unfair.  Estelle v. McGuire, 502 U.S. 62, 72 (1991). The challenged jury instructions "may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." Id. (internal quotation marks and citation omitted). "If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." Middleton, 541 U.S. at 437, 124 S.Ct. 1830. The law presumes that the jury follows the instructions given.  Richardson v. Marsh, 481 U.S. 200, 211 (1987).

In challenging a jury instruction, the petitioner must show both that the instruction was ambiguous and that there was "a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." Waddington v. Sarausad, 555 U.S. 179, 190-91 (2009) (citing Estelle, 502 U .S. at 72). A "reasonable likelihood" is lower than the "more likely than not" standard but higher than a mere "possibility." Polk v. Sandoval, 503 F.3d 903, 910 (9th Cir. 2007).  A determination that there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution

establishes only that an error has occurred.  <u>Calderon v. Coleman</u>, 525 U.S. 141, 146 (1998).  If an error is found, the court also must determine that the error had a substantial and injurious effect or influence in determining the jury's verdict, <u>see</u> <u>Brecht</u>, 507 U.S. at 637, before granting relief in habeas proceedings. <u>See</u> <u>Calderon</u>, 525 U.S. at 146-47.

After reviewing the instructions as a whole and the complete trial record, the Court agrees with the report and recommendation and concludes there was no reasonable likelihood that the jury applied the instructions regarding intent and the provocative act in a way that relieved the state of its burden of proving every element beyond a reasonable doubt.  The prosecution's case required the jury to find the defendant had "specific intent" to evade the pursuing officer under a violation of the vehicle code. (Dkt. No. 66 at 8; Lodgment 4 at 304).  At retrial, the jury was instructed that they had to find the provocative act was intentional, and instructed that in order to find Petitioner committed the alleged provocative act, they must find he "did so with the specific intent to evade the pursing peace officer." (Lodgment 4 at 295 & 304.)  Furthermore, the jury was instructed on "Concurrence of Act and Specific Intent," CALJIC No. 3.31, which instructed the jury that they had to find Petitioner had the specific intent to commit the crime of robbery and the specific intent to commit a provocative act. (<u>Id.</u> at 290.)  This instruction noted that the specific intent required for the crime of robbery and the crime of evading a pursuing police officer were included in the definition of those crimes set forth elsewhere in the instructions. (<u>Id.</u>)

The trial judge's response to the jury note did not eviscerate the requirement of intent, as he simply stated in response that there is no legal definition of "intentional."  The Court finds no error as the instructions did not omit a necessary element of the crime because they specifically required the jury to find an intentional provocative act and the provocative act was defined as requiring specific intent to evade a pursuing peace officer. (Lodgment 4 at 295 & 304.)  In looking at the jury instructions as a whole, and the trial record, the Court finds the jury was properly instructed as to every element of the provocative act doctrine and every element to find Petitioner committed the requisite provocative act with specific intent.  Therefore, Petitioner's retrial was not fundamentally unfair and his due process rights were not violated.  After a *de novo* review, the Court concludes that

1  Petitioner is not entitled to habeas relief on this claim.

2  **D.        Certificate of Appealability**

3          Rule 11 of the Federal Rules Governing Section 2254 Cases, "[t]he district court must issue

4  or deny a certificate of appealability when it enters a final order adverse to the applicant."  A

5  certificate of appealability should be issued only where the petition presents "a substantial showing

6  of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A certificate of appealability "should

7  issue when the prisoner shows . . . that jurists of reason would find it debatable whether the petition

8  states a valid claim of the denial of a constitutional right and that jurists of reason would find it

9  debatable whether the district court was correct in its procedural ruling."  <u>Slack v. McDaniel</u>, 529 U.S.

10  473, 484 (2000).

11          Based on the Court's review of the petition, the Court finds no issues are debatable among

12  jurists of reason and that no jurists of reason would find it debatable whether the district court was

13  correct in its procedural ruling.  <u>See</u> <u>id.</u>  Accordingly, a certificate of appealability is DENIED as to

14  the claims in the first amended petition.

15                              **Conclusion**

16          For the reasons set forth above, IT IS HEREBY ORDERED that the Court **ADOPTS** the

17  report and recommendation of the Magistrate Judge in its entirety and **DENIES** the first amended

18  petition for writ of habeas corpus. The Court also **DENIES** a certificate of appealability.

19          IT IS SO ORDERED.

20

21  <u>DATED:  September 14, 2012</u>

22                              _____

23                              <u>Hon. Anthony J. Battaglia</u>
                              <u>U.S. District Judge</u>

24

25

26

27

28                              21